**Manuel HERNANDEZ, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 77–1098.**

United States District Court, D. Idaho.

July 3, 1978.

Ernesto G. Sanchez and Andrew C. Thomas, Idaho Legal Aid Services, Caldwell, Idaho, for plaintiff.

M. Karl Shurtliff, U. S. Atty., District of Idaho and James A. Bevis, Asst. U. S. Atty., Boise, Idaho, for defendant.

## MEMORANDUM DECISION

McNICHOLS, Chief Judge.

■ Following an adverse ruling, claimant instituted the present action for review pursuant to 42 U.S.C. § 405(g). The Secretary disallowed Mr. Hernandez's claims for disability insurance benefits and a period of disability and supplemental security income.[1] Both parties have moved for summary judgment on the administrative transcript. The Secretary's motion is denied and the case remanded.

The principal issues are:

I. Whether the record reflects substantial evidence supportive of the Secretary's findings that claimant retains the capacity to perform sedentary work.

II. Whether claimant's history of arduous labor and his marginal education presumptively entitled him to benefits under 20 C.F.R. § 416.-902(c) (1977).

III. Whether the burden of showing that Mr. Hernandez could perform alternate employment devolved upon the Secretary, and, if so, whether that burden was satisfied.

IV. Whether Mr. Hernandez can realistically perform the positions specified by the Secretary.

## PROCEDURAL HISTORY

The procedural genesis of this case occurred on February 5, 1976, when Mr. Hernandez submitted an application for benefits. After a denial of benefits, a decision adhered to upon reconsideration, claimant requested a hearing, which was held on November 17, 1976. The hearing examiner, who considered the case *de novo*, also disallowed the claim. His ruling became the final decision of the Secretary when it was affirmed by the Appeals Council on April 7, 1977. Mr. Hernandez initiated this action by filing a complaint on June 10, 1977.

## GENERAL BACKGROUND

Mr. Hernandez was born on February 12, 1931 in Texas and completed just five or six years of school. He speaks some English, but cannot write it. The interview notes of a social service employee contain the observation that there are significant limitations on Mr. Hernandez's usage of English.[2] (Transcript 120.)

[1]. The claim of entitlement to SSI benefits does not appear to alter the task of this court on review. A finding of "disability," identical to that required for recovery of disability insurance benefits, is a precondition for an award of SSI payments. *See* 42 U.S.C. § 1382c(a)(3)(A).

[2]. The claimant's own testimony also attests to Mr. Hernandez's limited control of English.

Since claimant invokes 20 C.F.R. § 416.-902(c) (1977), which relaxes eligibility requirements for applicants who have engaged in arduous labor for many years, he argues that his employment history assumes special significance. Prior to the advent of his physical impairment, the most common work engaged in by claimant was farm labor. Additional positions have included: canning machine operator, crew supervisor for a labor contractor, plumber's assistant, oil well worker, pipe layer, and gas station attendant. Most recently, claimant was employed on the loading docks of Amalgamated Sugar Co. in Nampa, Idaho. He alleges that he has suffered from a disabling condition[3] since July 14, 1971.

Claimant purports to have ceased working in 1971 owing to cardiac malfunctioning. His infirmity has been characterized as both severe and moderate aortic regurgitation and aortic valvular insufficiency. Replacement of a heart valve has been contemplated. The chief consequence of the heart condition, according to claimant, is rapid fatigue. He purports to be able to walk only three or four blocks before succumbing to exhaustion and dizziness. A five to ten minute rest might be sufficient for him to resume walking a short distance farther. (Tr. 49.)

Other symptoms described by Mr. Hernandez include restricted use of his left arm and hand, numbness in the left arm, and difficulty bending. Claimant has been prescribed an unidentified anodyne. In Octo-ber, 1976 claimant lapsed into a coma and was hospitalized for three days. This incident appears to be connected with claimant's heart condition. (Tr. 59.)

Except for a fruitless application for work in the fields in 1975, there is no evidence of attempts by claimant to secure employment since the onset of his impairment. Yet claimant has not been totally quiescent. Testimony regarding his daily activities since 1971 is conflicting, but the Secretary could reasonably have concluded that Mr. Hernandez sporadically washes clothes and dishes, sweeps, cooks, and drives Mrs. Hernandez, who is enfeebled, to the grocery store.[4]

## SCOPE OF REVIEW

The Social Security Act ordains that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .." 42 U.S.C. § 405(g). Perhaps the primary task of this court on review is to scrutinize the Secretary's factual findings to determine whether they are discordant with this standard. However, additional inquiries must be conducted. Stated broadly, this court must determine whether the Secretary applied the correct principles in assessing a claimant's assertion that he is incapable of substantial gainful employment. For "[e]ven though the findings be supported by substantial evidence, the decision should be set aside if the proper legal standards were not applied in weighing the evidence and mak-

For example, in response to a question regarding his diet, claimant said that he was allowed only 175 calories per day whereas "some, like this guy over here. He's supposed to be on 15 or 20,000. Like here you can be like 30,000 you see. I'm smaller so I have to eat so much." (Tr. 53–54.)

3. The term "disability" is defined under the Social Security Act, 42 U.S.C. § 423(d)(1), as

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

(2) For purposes of (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . .

4. In short, there is substantial evidence underlying the Secretary's determination in regard to claimant's daily activities; substantial evidence is merely "such relevant evidence as a reasonable mind might accept as adequate to support its conclusion." *Walker v. Mathews*, 546 F.2d 814, 818 (9th Cir. 1976) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

ing the decision." *Flake v. Gardner,* 399 F.2d 532, 540 (9th Cir. 1968). *Accord, Ferran v. Fleming,* 293 F.2d 568, 571 (5th Cir. 1961).

■ In *Benitez v. Califano,* 573 F.2d 653 (9th Cir. 1978), a case which bears notable factual similarities to the instant one,[5] the Ninth Circuit proffered a general statement of principles designed to aid in the just determination of Social Security cases. Most generally, *Benitez,* unlike previous Ninth Circuit decisions, expressly recognizes the proposition that the Social Security Act is remedial in purpose and therefore to be construed liberally. *Id.* at 655 (citing *Brinker v. Weinberger,* 522 F.2d 13, 17–18 (8th Cir. 1975)). This rule is in accord with logic and precedent. *See Eisenhauer v. Mathews,* 535 F.2d 681, 686 (2d Cir. 1976); *Adams v. Weinberger,* 521 F.2d 656, 659 (2nd Cir. 1975); *Mandrell v. Weinberger,* 511 F.2d 1102, 1103 (10th Cir. 1975); *Broussard v. Weinberger,* 499 F.2d 969, 970 (5th Cir. 1974); *Herbst v. Finch,* 473 F.2d 771, 775 (2d Cir. 1972). *But see Sorenson v. Weinberger,* 514 F.2d 1112, 1119 (9th Cir. 1975).

Focusing on the expectations engendered by the Social Security Act, at least one Ninth Circuit case portended adoption of the liberal construction rule.

The Social Security Act created expectations among contributors to the insurance fund that they would be protected in case they became sick or were injured and could no longer work. . . . To deny Eddie Walker benefits in the present case would indeed be breaking faith with the promise of the Act.

*Walker v. Mathews,* 546 F.2d 814, 820–21 (9th Cir. 1976) (footnote omitted).

■ In addition to emphasizing the remedial purpose of the Social Security Act, *Benitez* requires that to "establish that a claimant . . . has the ability to engage in any substantial gainful activity . . . it must be shown that the claimant can *realistically* perform in existing employment."[6] 573 F.2d at 655 (quoting *Brinker,* 522 F.2d at 17–18). The stress upon realistic ability is not unprecedented in principle. *See Rosin v. Secretary of HEW,* 379 F.2d 189, 195 (9th Cir. 1967). However, *Benitez* infuses this standard with greater meaning by its pragmatic analysis.

Lastly, the circuit court approvingly quoted *Ferran v. Fleming,* 293 F.2d 568, 571–72 (5th Cir. 1961): "[T]o sustain a finding of no disability there must be some record showing that [the claimant] can actually engage in some reasonably available and substantial gainful activity." *Benitez,* 573 F.2d at 655–56.

This court is persuaded that *Benitez* signals a metamorphosis of the law in the Ninth Circuit with respect to determining a claimant's ability to engage in substantial gainful work. Mindful of its counsel the issues of this case will be examined.

I. Whether the record contains substantial evidence supportive of the Secretary's finding that claimant is capable of engaging in light, sedentary work.

The hearing examiner inferred from claimant's narrative of his daily activities

**5.** A comparative analysis of the facts of *Benitez* and the present case appears *infra.*

**6.** It may be noted that *Benitez* relies on decisions that antedate the 1967 amendments to the Social Security Act. *See Rosin, supra; Torres v. Celebrezze,* 349 F.2d 342, 344 (1st Cir. 1965); *Ferran v. Fleming,* 293 F.2d 568, 571–72 (5th Cir. 1961). The legislative history of these amendments discloses that in pertinent part the Congressional purpose was: (1) to enlarge to a national scope the geographic area to be considered in assessing a claimant's ability to engage in substantial gainful employment and (2) to proscribe awards of benefits stemming from

restrictive local hiring practices or employer preferences, which are objectively unrelated to a claimant's capacity to perform substantial gainful employment. *See* S.Rep. No. 744,, 90th Cong., 1st Sess., *reprinted in* [1967] U.S.Code Cong. & Admin.News, pp. 2834, 2880–83. By directing attention to pragmatic and nationally uniform factors affecting a claimant's ability to perform in existing employment, *Benitez* in no way flouts these purposes. 42 U.S.C. § 423(d)(2)(A), specifically requires that factors such as age, education, and work experience be considered in determining a claimant's ability to perform substantial gainful work.

and the medical reports in evidence that Mr. Hernandez retains the residual capacity to engage in substantial gainful work of a light, sedentary nature. The evidence pertaining to claimant's performance of household chores has been recited above. The reports of several physicians suggest that although claimant is incapable of engaging in strenuous labor, he is not precluded from performing light, sedentary work. The Secretary also relied upon the statement of a psychiatrist that the monetary incentives enticing claimant not to work outweigh those luring him to work.[7]

Typically, at this juncture it would be proper to conclude that the substantial evidence rule fully insulates the Secretary's decision. For the reasons articulated below this is not such a case.

## II. Whether claimant's history of arduous labor and his marginal education presumptively entitle him to disability benefits.

The Secretary tersely disposed of this question, ruling that the applicable regulation, 20 C.F.R. § 416.902(c) (1977), is unavailing on the ground that Mr. Hernandez is neither aged nor the possessor of a long work history of arduous employment. The regulation in issue establishes a special standard for assessing entitlement to benefits for "an individual with a marginal education and long work experience (e. g., 35 to 40 years or more) limited to the performance of arduous unskilled physical labor . . .." 20 C.F.R. § 416.902(c) (1977). Claimant himself purports to have a history of arduous work of approximately twenty-five years. He therefore does not fall within the class of individuals the regulation is unmistakably intended to protect.[8]

## III. Whether the burden of showing that Mr. Hernandez could perform alternate employment devolved upon the Secretary, and, if so, whether that burden was satisfied.

It is incontrovertible that once a claimant establishes the inability to continue in his former employment, the burden of going forward with evidence devolves upon the Secretary, who must then show that considering claimant's age, education, work experience, and physical shortcomings, he has the capacity to perform alternate work. *Benitez,* 573 F.2d at 655; *Rosin,* 379 F.2d at 195.

The Secretary concedes that Mr. Hernandez's condition precludes him from resuming work at the loading docks of Amalgamated Sugar Co. in Nampa, Idaho. Similarly, it is not disputed that the jobs at which claimant labored in the course of his lifetime require greater stamina than he currently possesses. Moreover, none of the jobs identified as performable by claimant[9] are among those he formerly engaged in. Consequently, it was incumbent upon the Secretary to offer evidence of other positions claimant retained the residual capacity to perform.

Although there is no blanket requirement that a vocational expert purvey "particularized proof" of alternate employability, such evidence ordinarily underpins the Secretary's finding. *McLamore v. Weinberger,* 538 F.2d 572, 575 (4th Cir. 1976); see *Hernandez v. Weinberger,* 493 F.2d 1120, 1123 (1st Cir. 1974). A vocational expert could have specifically compared claimant's limi-

---

**7.** The Secretary omits any reference to the statement of a social worker that Mr. Hernandez exhibited eagerness to return to work. (Tr. 116.)

**8.** The question of whether a claimant with a history of arduous employment of less·than 35 years could ever gain comfort from 20 C.F.R. § 416.902(c) (1977) is not presented and therefore not ruled upon.

**9.** Positions enumerated include: light assembly work, security guard or night watchman, light

motorized delivery or messenger service, attendant in a self-service gasoline station or parking lot. Mr. Hernandez did not operate a cash register as a service station attendant. The record provides no guidance in regard to whether claimant possesses the aptitude necessary to learn this skill. Thus, the Secretary's finding that claimant retains the capacity to work as an attendant at a self-service gasoline station is not tantamount to a finding that claimant is capable of performing work he formerly engaged in.

tations with the requirements of the jobs asserted by the Secretary to be performable by Mr. Hernandez. Concededly, physicians have testified that claimant has the residual capacity to perform light work. However, the conclusion of a physician, standing alone, has been held insufficient to support a finding of "employability." *Taylor v. Weinberger,* 512 F.2d 664, 667 (4th Cir. 1975); *Orzel v. Finch,* 445 F.2d 150, 154 (7th Cir. 1971). A doctor's opinion is more germane, of course, on the question of disability. Moreover, Dr. Kerrick, the physician most informed regarding claimant's status, is firmly convinced that vocational training is a *sine qua non* for claimant's reentry into the labor market. (Tr. 183, 185, 197–99, 206.) Since sedentary work is prescribed and claimant has never engaged in such work, Dr. Kerrick's view is difficult to fault.

In this case "particularized proof," in the form of a vocational expert's testimony, might have allayed the suspicion that the hearing examiner perfunctorily recited the ritual litany of light, sedentary jobs available in the national economy without scrutinizing the singular qualities of Mr. Hernandez. The absence of concrete evidence concerning alternate work is fatal. In regard to this issue, two disability cases where the onus of producing evidence shifted to the Secretary are instructive.

In *McLamore,* the absence of "particularized proof" of claimant's employability did not warrant a remand. However, McLamore, unlike Mr. Hernandez, was not taking medication, was thirty-years old, was an articulate high school graduate, and his injury was minor. 538 F.2d at 574. In light of these factors, the court ruled that claimant's ability to engage in substantial work was "within the common knowledge and experience of ordinary men." *Id.* at 575.

Common knowledge and experience do not yield an answer to the pivotal question of this case.

■ In *Hernandez,* the circuit court remanded because "the Secretary came forward with no evidence showing that, considering claimant's age, education, work experience and impairment, there are jobs which she could perform." 493 F.2d at 1123. The dearth of evidence presented in *Hernandez* surpasses the quantum available for this court to review.[10] In the instant case, the Secretary expresses the conclusory opinion that claimant possesses the basic skills to perform the specified positions. There is no evidence illuminating what those skills are and how the postulated skills correspond to Mr. Hernandez's ability to engage in the light, sedentary work specified. In view of the Secretary's utter failure to adduce proof of alternate employability, claimant's case must be remanded for further proceedings on this issue.

IV. Whether Mr. Hernandez can realistically perform the positions specified by the Secretary.

■ The Secretary's failure to appraise the evidence in light of claimant's realistic ability to engage in gainful employment, the criterion prescribed in *Benitez,* is an independent basis for remanding the Secretary's final decision. This result is compelled in part by this court's recognition of the factual similarities of *Benitez* and the instant case.

*Benitez* was born in 1935 and completed the fourth grade. At the time of the administrative hearing he could speak and understand some English, but could not read or write it. His back injury precluded return to his former work as a farm labor-

---

10. In *Hernandez* the evidence relative to the ability to perform sedentary work consisted of the following colloquy:

"Q. Have you ever been trained to operate a sewing machine?

A. When I was at the laundry and for the time that I was pregnant they would let me sit at the machine but that was not my job—that job belonged to another girl.

Q. What would that machine do?

A. That was a darning machine, weaving, to fix the clothes that were torn. It was like a sewing machine but it was used for darning and weaving."

493 F.2d at 1123.

er. A vocational expert testified that light, sedentary jobs were available, but that Benitez's "lack of education and fluency with English would make it difficult for him to obtain those jobs." 573 F.2d at 654. The hearing examiner concluded that Benitez was "not able to perform said jobs which are within his residual physical capacity because of his restricted literacy and fluency with the English language." *Id.*

In *Benitez* the Secretary contended that 20 C.F.R. § 404.1502(b) (1976) requires that the primary reason for disability must be a physical impairment, not a language or educational deficiency. *Id.* at 656. The court rejected the Secretary's narrow construction of the regulation stating: "Although the claimant's inability to engage in gainful activity must primarily result from physical impairment, that *physical impairment and consequent unemployability must not be viewed in a vacuum, but pragmatically in the light of the claimant's age, education, and experience.*" *Id.* at 656 (emphasis supplied). The Secretary's failure to view the totality of the evidence in light of practical and realistic considerations caused *Benitez* to be remanded. *Id.* at 657. After a fastidious review of the record, this court concludes that a similar disposition is in order here.

Without attempting to usurp the duty of the Secretary to make factual findings, it may be of assistance for this court to suggest subjects that could be more fully explored on remand. The first is the effect of claimant's imperfect English in connection with his ability to perform work which entails regular exposure to the public, as do some of the jobs specified by the Secretary. As *Benitez* forcibly evinces, limitations on the usage of English may be of moment in considering whether a disability exists.

A second area for inquiry is the possibility of claimant being retrained for alternate work. Dr. Kerrick reported that claimant's ability to learn another type of job "seems to be very, very limited." (Tr. 199.) On another occasion, he stated: "It is theoretically possible that he could do a sedentary type job, however, nothing has ever been

accomplished in the way of trying to retrain him. . . . He is basically uneducated, possibly too old to benefit by additional education." (Tr. 197.) Dr. Kerrick's remarks are exceedingly disquieting in light of his extensive familiarity with claimant's condition.

Third, precise findings regarding claimant's lack of endurance are indispensable under the facts of this case.

In sum, the relevance of pragmatic considerations should not be underestimated. To be sufficient the Secretary's "*proof must not be based on the claimant's mere theoretical ability* to do some kind of work, *but* must be based *on practical and realistic considerations*, such as education, experience, emotional and physical condition and reasonable job opportunities . . .." *Benitez*, 573 F.2d at 655, (quoting *Rosin*, 379 F.2d at 195 (emphasis supplied)). The record does not currently reflect such proof.

Accordingly, for the reasons stated herein the motion for summary judgment of the Secretary is denied, and pursuant to 42 U.S.C. § 405(g) the case is remanded to the Secretary for further proceedings consistent with this opinion.