**Henry HARRELL, Jr.,**
**Plaintiff-Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Resources, Defendant-Appellee.**

**No. 79–2935**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1980.

David S. Yen, Legal Services Corp. of Ala., Montgomery, Ala., for plaintiff-appellant.

Barry E. Teague, U. S. Atty., Susan B. Bevill, Asst. U. S. Atty., Montgomery, Ala., for defendant-appellee.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

PER CURIAM:

This appeal involves the denial of an application for a period of disability and disability insurance benefits by the Secretary of Health, Education and Welfare. On June 13, 1977, Appellant, Henry Harrell, Jr., applied a third time[1] for disability benefits under sections 216(i) and 223 of the

---

peals. 8 U.S.C. § 1255(a); *see* 8 C.F.R. §§ 3.1, 242.8, 242.21, 245.2(c).

1. Two earlier applications filed by Harrell in 1974 and 1976 based on the same injury were

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423,[2] alleging that he became unable to work in December of 1973 due to a job-related injury sustained in 1970. On June 28, 1978, a hearing on Harrell's claim was held before an administrative law judge who considered evidence consisting of oral testimony of Harrell, his wife and Bobby Roberts, a qualified vocational expert, as well as documentary evidence, including medical reports of several doctors who examined Harrell at various times since 1970. The administrative law judge rendered a decision denying Harrell's claim on August 23, 1978. The Appeals Council denied Harrell's request for review on November 17, 1978, thus adopting the decision of the administrative law judge as that of the Secretary. Pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), Harrell filed an action in the District Court for the Middle District of Alabama on January 11, 1979. The case was submitted to the magistrate on the pleadings and supporting briefs. On June 12, 1979, the magistrate recommended that the Secretary's decision be affirmed. On June 14, 1979, the district court entered an opinion and order affirming the decision of the Secretary, denying disability benefits without taxation of costs.

We hold that in finding no disability, the administrative law judge and the court below failed to accord proper weight to the disabling effect of the regimen of treatment necessitated by Harrell's injury. Viewing the record as a whole, including evidence and testimony relevant to the treatment issue, we conclude that the decision of the Secretary is not supported by substantial evidence and we reverse.

At the hearing, Appellant testified that he was born in Selma, Alabama on June 30, 1928. He attended school in Detroit, Michigan through the eleventh grade. In 1946 he began working for Chrysler Corporation in Detroit as a paint repairer on an automobile assembly line. By the time he left Chrysler in 1973, Harrell had progressed to a supervisory position which he said "involved lifting and pushing and moving different things around."[3] In 1970 Harrell was injured when he attempted to prevent an automobile from crashing into two other employees who had their backs to the car as it came down the assembly line. Immedi-

denied but judicial review was apparently not sought.

2. 42 U.S.C. § 416(i) provides in pertinent part: the term "disability" means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . . .
42 U.S.C. § 423 provides in pertinent part:
(d)(1) The term "disability" means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . . .
(2) For purposes of paragraph (1)(A)—
(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of sub-

stantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. . . .

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

3. At the hearing the vocational expert testified that Harrell's overall employment classification at Chrysler would fall between medium and heavy. The classifications are standardized by the United States Department of Labor and relate primarily to the weight factors involved in the particular jobs and to the utilization of the extremities.

ately after the accident, Harrell went to First Aid where x-rays were taken. He was then sent to Henry Ford Hospital where he stayed for ten days. About six months later, Harrell returned to work at Chrysler. Unable to continue in his former capacity as supervisor because of a pinched nerve in his neck and shoulder, Harrell tried at least five or six less strenuous jobs at Chrysler, but to no avail. He worked on and off there until December of 1973, when he aggravated his injury by doing some heavy pushing at work. At the time he left Chrysler, he was about three months short of the thirty years' service which would have qualified him for retirement benefits. He has received workers' compensation benefits since 1974. Since 1973 Harrell has not attempted to undertake employment and he testified that due to the pain he suffers, he is able to engage in activities such as helping with housework and yardwork and driving a car for only short periods of time. Harrell stated that he does not go out much and that he experiences pain even when he limits his activities to reading and watching television. Harrell testified that he has pain in his left shoulder, arm, hand, leg and back, and numbness in his left hand. He said he sometimes has difficulty standing, bending and walking, and discomfort from sitting for extended periods. He has had trouble sleeping because of the pain since 1970 and has frequent severe headaches. Harrell's wife testified that her husband was in pain and that she sometimes had to help him get out of the bathtub or put on his shirt. Harrell testified that to combat the pain, which he has every day or so, he sometimes wears a collar, takes heat treatments at night, takes medication including Darvocet and Norgesic Forte, which he said makes him drowsy and sleepy, and takes traction on an average of twice a day for about twelve to fifteen minutes each time, after which he has to lie down. This treatment appears to alleviate but not eliminate the pain.

The medical evidence of record consists chiefly of reports by Dr. Rogers, who was Harrell's doctor from 1971 until 1976, Dr. Bostwick, who began treating him in 1977 after he moved to Alabama, and Dr. Carino, a consulting physician for the Social Security Administration who examined Harrell in 1976. Included in the record are copies of pages of the Physician's Desk Reference which contain information regarding possible side effects of some of the medications prescribed for Harrell.

All three doctors were in agreement that Harrell suffered from degenerative disc disease at the C5–6 level, called cervical spondylosis with spurring, resulting in radiculitis. In addition, Dr. Bostwick discovered a small nerve root cyst at the C7 level on the left. The physicians' reports enumerate Harrell's repeated complaints of pain and other difficulties. Both treating doctors prescribed what they called conservative measures of treatment, including the collar, traction and pain-killing medication described by Harrell at the hearing.

While it appears that the fact of Harrell's disc disease was unquestionable, the degree to which it was, or should have been, incapacitating was not. In 1974, Dr. Rogers stated that there was "no reason why this patient cannot be gainfully employed." In 1976, Dr. Rogers was still of the opinion that Harrell suffered from cervical spondylosis and still found it hard to accept that Harrell could not do anything because of his discomfort. Dr. Carino, the consulting doctor for the Social Security Administration, stated "as far as the disability of this patient is concerned, I do not have any objective basis for his complaints but because he was told that he had a pinched nerve by myelgram [sic] at Henry Ford Hospital, then this has to be taken at face value." Dr. Bostwick stated that "to say that there was not an element of objectivity [to the subjective findings] would be probably in error."

At the hearing, the administrative law judge asked Mr. Roberts, the vocational expert, some hypothetical questions. In the first hypothetical, the judge asked the expert to assume an individual of identical age, educational development and work history as the claimant, to assume that this person had a history of disc disease at the

C–5, C–6 level, with cervical radiculopathy and to assume that the individual still retained the residual capacity to perform the physical requirements of light and sedentary work. In response to the question whether there would be any jobs in the economy that such a person could realistically engage in, given only normal orientation from the employer, the vocational expert said that there would be a wide range of both light and sedentary work activities this person could perform.[4]

The second hypothetical which the administrative law judge posed asked the vocational expert to assume the same individual given in the prior hypothetical, all impairments as testified to by Harrell, including the difficulties he described, the limitations of motion and the pain. When asked how that would affect such a person's ability to perform the jobs the vocational expert identified in the first hypothetical, the expert replied as follows:

> Looking at the impairments, primarily located in the left hemisphere, it would reduce these—the—the regiment [sic] that would be required in the way of medication—of course, I'm not a physician—but the side-effects have—have been described in testimony and the fact that traction twice a day, which after this occurs the person would have to lie down, this would—you know, looking at the regiment itself would significantly affect the person. As far as the limitation to the left extremity, this would reduce the number of jobs I indicated but not—of course, but if you considered that in combination with the regiment required, it surely would restrict a person from gainful activities that I know of.

When asked by the claimant's attorney what he meant by the "regiment," Mr. Roberts indicated that he meant the traction, the subsequent need to rest and the medication, stating that "as he described the effects of the medicine and the traction, I look at it as interrupting an eight-hour workday, having to do this would interrupt

that to a significant level." The administrative law judge then asked the expert whether the difficulty with the left arm as Harrell described it, without taking into consideration the medical regimen, would prevent his being able to perform the jobs the expert had previously described. Mr. Roberts indicated that looking only at the limitation of the upper left extremity, the answer was no, since it would not affect the sales or inspection job activities.

The administrative law judge concluded that the evidence failed to demonstrate an impairment or combination of impairments of a level of severity as would prevent the claimant from engaging in at least some light or sedentary work activity. The judge stated that the record demonstrated that the claimant had an injury to the cervical spine and conceded that the reports of his doctors disclosed some difficulty. The judge further indicated that none of the medical reports described physical findings commensurate with Harrell's complaints and made the following observation:

> At the hearing, the claimant's own description of these complaints, to say the least, was not convincing. At the time of the hearing claimant looked good and was in no apparent distress. He was well groomed and alert and certainly did not give the appearance of a person suffering from long standing, chronic pain.

In his findings, the administrative law judge stated the following:

> 4. The medical evidence establishes that the claimant has a history of work related injury to his cervical spine (disc disease C5–C6 level with cervical radiculopathy).

> 5. Vocational evidence establishes the claimant retains the residual capacity to engage in a substantial number of jobs in the general region in which the claimant lives. Among these jobs are retail salesperson, inspector, radio dispatcher, production line sorter, and electronics assembler.

---

4. Among examples given were jobs as a salesperson (primarily in retail sales), radio dis-

patcher, and inspector in assembly plants, such as electronic assembly plants.

6. The evidence fails to establish that the claimant has a physical or mental impairment or combination of impairments of a level of severity that has lasted or can be expected to last for a continuous period of 12 months or more that prevents the claimant from engaging in substantial gainful activity.

7. The claimant is not under a disability as defined in the Social Security Act on the date of this decision or at any time prior thereto.

According to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), the Secretary's fact findings are conclusive if they are supported by substantial evidence. Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). Under this standard, the scope of review of the appellate court is quite limited. *Chaney v. Califano,* 588 F.2d 958, 959 (5th Cir. 1979). It may neither reweigh the evidence nor substitute its judgment for that of the Secretary. *Id.; Goodley v. Harris,* 608 F.2d 234, 236 (5th Cir. 1979). Of course, the reviewing court must also decide whether the Secretary used proper standards in reaching a decision. *Knox v. Finch,* 427 F.2d 919, 920 (5th Cir. 1970). It is incumbent upon the court to examine the record in its entirety in order to determine whether the decision reached is supportable. *Simmons v. Harris,* 602 F.2d 1233, 1236 (5th Cir. 1979).

In the instant case, the administrative law judge based the finding that Harrell retained the residual capacity to engage in substantial gainful activity on the testimony of the vocational expert. The hypotheticals propounded to the expert were incomplete in that they did not ask him to take into account Harrell's regimen of treatment. *See Stephens v. Secretary of HEW,* 603 F.2d 36, 41–42 (8th Cir. 1979) (hypothetical question must comprehensively describe the limitations on a claimant's ability to function). Nevertheless, Mr. Roberts, in responding to the second hypothetical, expressly considered what he called Harrell's "regiment" as described in the record and concluded that the treatment in conjunction with the limitation to the left extremity would preclude Harrell from engaging in gainful activities. The administrative law judge then expressly eliminated the medical "regiment" from the expert's consideration and elicited the response that the limitation to the upper left extremity alone would not prevent Harrell from engaging in substantial gainful activity.

In determining that Harrell is not under a disability as defined by the Social Security Act, the judge failed properly to apply the evidence as developed in the record. Only when consideration of the regimen was eliminated did the vocational expert think that Harrell could engage in substantial gainful activity. In view of the fact that both of Harrell's treating physicians indicated that the regimen of treatment they prescribed was required, it was error to assume away that fact. Thus, Harrell established an impairment which necessitated a medical regimen which in turn, in the opinion of the vocational expert, precluded him from engaging in gainful activity. *See Simmons v. Harris,* 602 F.2d 1233, 1236–37 (5th Cir. 1979) (reversing denial of disability benefits where Secretary's determination that plaintiff's pain was not of a disabling level was held to be unreasonable in light of the evidence, and vocational expert opinion testimony was to the effect that if plaintiff had to rest beyond normal coffee and lunch breaks during eight-hour workday, plaintiff could not perform any jobs previously enumerated in response to a hypothetical question assuming mild to moderate impairments); *Harcrow v. Califano,* [Jan. 1978– Jan. 1979 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 15,676 at 2183–84 (N.D. Ala. 1977) (reversing denial of disability benefits where there was abundant evidence of plaintiff's pain and vocational expert's testimony made it clear that plaintiff's required daily program of therapy, including

hot sitz baths and hot soaks, prevented her from engaging in substantial gainful employment); *Plouse v. Richardson,* 334 F.Supp. 1086, 1088 (W.D. Pa. 1971) (reversing denial of disability benefits where there was ample evidence of plaintiff's pain and vocational expert opined that limitations which plaintiff, who suffered from tachycardia, placed upon her activities in terms of frequent rest periods prevented her from engaging in any employment).

The judgment is reversed and the case is remanded to the district court so that it may issue an appropriate order directing the Secretary to grant Appellant the disability benefits to which he is entitled, in accordance with this opinion.

REVERSED and REMANDED.