**J. B. GRESHAM, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary, Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. H-79-1288.**

United States District Court, S. D. Texas, Houston Division.

April 13, 1981.

Robert B. O'Keefe, East Texas Legal Services, Nacogdoches, Tex., for plaintiff.

James S. Dougherty, Asst. U. S. Atty., Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

SEALS, District Judge.

Plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, 42

U.S.C. § 405(g), for judicial review of a final decision of the Secretary of Health, Education and Welfare,[1] denying his claim for social security disability benefits. Presently before the Court are plaintiff's Motion for Summary Judgment or in the Alternative, Motion to Remand, and defendant's Motion for Summary Judgment and in Opposition to Remand.

On November 22, 1977, claimant, J. B. Gresham, (hereinafter plaintiff), filed an application with the Social Security Administration (SSA) for disability insurance benefits claiming he was disabled as a result of an accident which occurred on June 6, 1977, leaving his right arm injured and paralyzed. This application was denied both initially and upon reconsideration by the SSA. A hearing on the claim was then held on July 27, 1978, before the Administrative Law Judge (ALJ) who found that plaintiff was not entitled to social security disability benefits. The ALJ's decision became the final determination of the defendant, Secretary of Health, Education and Welfare, (Secretary) when the Appeals Council adopted it on April 16, 1979. This action is now properly before the Court for review. 42 U.S.C. § 405(g).

The evidence in the record indicates that on June 6, 1977, plaintiff fell through a glass door and lacerated an artery in his right wrist. He received emergency treatment that day, and, on the following day, he underwent surgery to remove glass that had remained in the wound. After the surgery, plaintiff complained of persisting pain in his wrist. A subsequent examination revealed that plaintiff had an aneurysm of the radial artery in his right wrist. A second surgical procedure was performed on July 18, 1977, to remove the aneurysm, and the radial artery in his right wrist was ligated. Plaintiff, however, maintained that the surgery did not provide him with relief from the pain. As a result, his doctors prescribed narcotic medication to alleviate the pain.

After continued complaints of severe pain, plaintiff's surgeon, Dr. Vine, recommended further surgery to remove the stellate ganglion nerve in plaintiff's right arm. The operation was performed on August 12, 1977. According to Dr. Vine's report, the surgery relieved the pain in plaintiff's hand, however, plaintiff began experiencing severe pain and loss of function in his right shoulder. Plaintiff's doctors continued to prescribe large doses of narcotic medication to alleviate his pain. Dr. Vine's medical report noted that he last saw plaintiff on September 19, 1977. The report also stated that "if Mr. Gresham is still experiencing the pain in his shoulder that he had at the time I last saw him he would be markedly incapacitated."

In October 1977, plaintiff went to the Houston Veterans Administration Hospital (V.A. Hospital) complaining of pain and loss of function in his right shoulder and elbow. Various diagnostic studies were performed, and plaintiff was placed on an outpatient therapy program consisting of range of motion exercises in combination with pain and sleep medication. After it was determined that plaintiff was not progressing satisfactorily on the prescribed outpatient therapy, and that further surgery was not appropriate, plaintiff was admitted to the V.A. Hospital for inpatient physical therapy on February 27, 1978. During plaintiff's admission, it was noted that in addition to his pain and loss of motion plaintiff also had a history of chronic alcohol abuse and was abusing his medication. Following plaintiff's discharge on April 28, 1978, the discharge summary revealed that (1) the swelling and pain in plaintiff's right hand had disappeared, (2) the range of motion in plaintiff's right shoulder had improved significantly although it had not returned to normal, (3) plaintiff's narcotic medication was reduced gradually, (4) a psychiatric consultation was requested to help the plaintiff manage the anxiety and emotional factors relating to his pain, and (5) overall,

---

1. The Department of Health, Education and Welfare is redesignated the Department of Health and Human Services pursuant to Pub. L.No. 96–88, § 509, 93 Stat. 695 (codified at 20 U.S.C. § 3508(a)).

plaintiff had responded well to the therapy. Plaintiff was continued on narcotic and sleep medication after his discharge.

Other physical and emotional abnormalities noted during plaintiff's stay at the V.A. Hospital included, *inter alia*, (1) benign lesions on the back of the right eye, (2) narrowing of the vertebral interspace of a portion of the cervical spine (3) the presence of a pin and some bony fusion in the left ankle from a previous injury, and (4) a hysterical personality disorder marked by dependence on alcohol and narcotics. After his discharge in April, plaintiff returned to the V.A. Hospital on several occasions complaining of pain for which he was prescribed additional narcotic medication. On one occasion plaintiff was admitted after overdosing on narcotic medication in combination with alcohol.

At the hearing before the ALJ, plaintiff testified he was a fifty-six year old college graduate who had worked as a real estate broker for approximately twenty years. Since his accident in June of 1977, he has not worked, driven a car or attended social functions. He spends most of his time at home, and his wife takes care of all of the household chores. Further, he has difficulty walking, due to the pain in his left ankle and loss of equilibrium, and must lie down several times a day. He has great difficulty writing and can no longer type. He experiences some hearing loss in his right ear and blurred vision in his right eye which he believes is due to the neurosurgical operation performed on August 12, 1977. He suffers constant pain and has a limited range of motion in his right shoulder. He is taking three forms of medication including narcotic pain medication. Plaintiff also testified that he had a drinking problem in the past but could not remember when he had his last drink. There was also testimony given by plaintiff's wife which essentially corroborated the testimony of her husband. There was no medical testimony given by any medical experts at the hearing.

The function of this Court in reviewing the findings of the Secretary is a limited one. The reviewing court may not reweigh

the evidence nor substitute its judgment for that of the Secretary. *Knott v. Califano,* 559 F.2d 279 (5th Cir. 1977); *Laffoon v. Califano,* 558 F.2d 253 (5th Cir. 1977). The Court must review the evidence in the record to determine if there is substantial evidence to support the agency's decision. *Fortenberry v. Harris,* 612 F.2d 947 (5th Cir. 1980). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Harris,* 612 F.2d 993, 997 (5th Cir. 1980), *quoting N.L.R.B. v. Columbian Enameling and Stamping Co.,* 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939). Notwithstanding the limited nature of this review, the Court can reverse a finding of the Secretary if it is not supported by substantial evidence. *Id.*

The claimant seeking to show disability as defined by the Social Security Act bears a heavy burden. *Simmons v. Harris,* 602 F.2d 1233 (5th Cir. 1979). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson,* 612 F.2d at 997, *quoting Rhynes v. Califano,* 586 F.2d 388, 389–390 (5th Cir. 1978).[2] However, if the claimant can show that s/he can no longer perform his or her previous job, the burden then shifts to the Secretary to show that there exists some other form of substantial gainful employment that the claimant can perform. *Fortenberry,* 612 F.2d at 950; *Johnson,* 612 F.2d at 997.

The ALJ did not explicitly hold that plaintiff could no longer perform his previous job, however, such a holding can be

---

**2.** Outlining the provisions of 42 U.S.C. § 423(d)(2)(A).

implied from the ALJ's findings and from his colloquy with the vocational expert. The ALJ posed the following hypothetical to Ms. Wells, the vocational expert:

> . . . Okay, so if I were to seek an assumption that would permit a finding that within twelve months of June 1, 1977, Mr. Gresham could perform any and all of his former occupations, without confining yourself to real estate—which is the principal occupation we all agree—I would have to find in [sic] the capacity for at least heavy, probably very heavy work, related activities on a reasonably regular basis, together with good use of the body and all extremities, and the additional factors you've mentioned of diplomacy, tact, dealing with the public and so forth. Physically I'd have to find good stamina, agility and mobility, and in his other work, major work, I would have to find good tact and diplomacy, forebearance to deal with sometimes unreasonable members of the public and so forth . . .

In his findings the ALJ stated, *inter alia*, that:

> Claimant's physical impairments precludes his engaging in heavy work or that requiring full use of both upper extremities.

> Claimant's said impairment did not, for any continuous period of at least twelve months, and does not prevent him from engaging in *other* forms of substantial gainful activity commensurate with his age, education and vocational background which exist in significant numbers in the national economy. (emphasis added)

Accordingly, it appears the ALJ found that plaintiff was no longer able to perform his previous work. Thus, the burden shifted to the Secretary to show that there existed some other form of substantial gainful employment that plaintiff could perform. *Fortenberry*, 612 F.2d at 950.

In order to satisfy this burden the Secretary presented a vocational expert to testify as to the types of jobs existing in the national economy which plaintiff could perform. Because of the inadequacies in the ALJ's examination of the vocational expert, we find that the Secretary failed to sustain its burden.

The ALJ, in his evaluation of the evidence, found that out of all of plaintiff's alleged impairments "that claimant's medically demonstrable impairments are [a] partial limitation of use of the right (dominant) upper extremity and a personality disorder manifested by hysteria, alcohol abuse, drug abuse, and multiple somatic complaints." (ALJ's Decision, Tr. 22) The vocational expert never testified about the availability of jobs for an individual with these aforesaid psychological impairments. Therefore, when the ALJ found that plaintiff "has no mental impairment of occupational consequences," he made a conclusion that was not supported by substantial evidence. (ALJ's Decision, Tr. 23) *See Johnson*, 612 F.2d at 998.

The Fifth Circuit in *Brenem v. Harris*, 621 F.2d 688 (1980), found a similar infirmity in the conclusion reached by the ALJ in that case. In *Brenem*, the court noted that the ALJ had found the existence of a psychological impairment in the form of a "mild hysterical conversion neurosis or a mild compensation neurosis with some mild anxiety and depression." *Id.* at 690. The court went on to hold that the ALJ could not have fully considered the plaintiff's disability because no evidence was given regarding the availability of jobs for an individual with plaintiff's *specific* psychological impairments as well as his physical defects. *Id.; See also Johnson*, 612 F.2d at 998. The fact that the ALJ posed a hypothetical couched in the general rubric of a mental or emotional problem does not cure this deficiency. No questions were posed to the vocational expert regarding plaintiff's personality disorder, drug abuse or alcohol abuse problems which the ALJ found to be medically demonstrable impairments and which surely could impact on plaintiff's ability to perform certain jobs. *See Brenem*, 621 F.2d at 690. When posing hypotheticals to the vocational expert, the ALJ should describe the claimant's impairments with particularity so that the vocational expert can properly assess the employment potential for such an individual. *Wroblewski v. Califano*, 609 F.2d 908, 914 (8th Cir. 1979); *See also Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980), *citing with*

approval *Stephens v. Secretary of Health, Education and Welfare*, 603 F.2d 36, 41–42 (8th Cir. 1979) (hypothetical question must comprehensibly describe claimant's limitations).

■ Plaintiff contends the ALJ erred in failing to pose a hypothetical to the vocation expert which included a reference to the effect of pain as a limitation on his ability to work. Pain alone can serve as the basis for disability even in the absence of supporting objective medical testimony. *Simmons*, 602 F.2d at 1236; *Gaultney v. Weinberger*, 505 F.2d 943 (5th Cir. 1974). The ALJ "must consider subjective evidence of pain as testified to by the claimant and other lay witnesses." *Gaultney*, 505 F.2d at 945. Both plaintiff and his wife testified that plaintiff has suffered and continues to suffer from severe pain, and plaintiff's medical history since the accident is replete with references to complaints of chronic pain. However, the inability to work without incurring some pain is not an automatic ground for disability. *Fortenberry*, 612 F.2d at 950; *Gaultney*, 505 F.2d at 946. The "factual determination of whether the claimant is able to work despite some pain is within the discretion of the ALJ and will be upheld if supported by substantial evidence." *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980), *quoting Fortenberry*, 612 F.2d at 950.

It is within the province of the ALJ to weigh conflicting evidence and determine whether the pain is disabling or is of such a degree as not to preclude the ability to work. *Gaultney*, 505 F.2d at 945–946. If the ALJ has not ignored the evidence of pain, and his decision that claimant is capable of working despite some pain is supported by substantial evidence, his finding must stand, even if this Court would have decided differently. *Gaultney*, 505 F.2d at 946; *Fortenberry*, 612 F.2d at 950. The ALJ did not ignore the subjective evidence of pain as testified to by plaintiff and his wife. Rather, he felt that conflicting medical testimony, particularly the discharge summary from the V.A. Hospital, discredited the subjective testimony of plaintiff and his wife as to the degree of pain that plaintiff was suffering. The ALJ also chose to give greater weight to this evidence[3] over conflicting medical evidence of chronic pain, and this he may do. *Laffoon*, 558 F.2d at 256.

Although the Court does not condone several of the unsupported inferences made by the ALJ regarding plaintiff's motivation for seeking disability benefits, and his desire for pain medication, our inquiry is limited to a determination of whether the findings of the Secretary are supported by substantial evidence in the record as a whole. *Simmons*, 602 F.2d at 1235.

The Court feels compelled to address the serious deficiencies in the treatment of social security disability claimants. The worker in our society, who pays social security taxes, has certain reasonable expectations of the social security system. Among these is a legitimate expectation that s/he will be protected against an unforeseen catastrophic accident or illness that may cut short his or her ability to continue as a productive member of the work force.

The disabled worker does not ask for a handout, but only for the insurance that s/he believes s/he is entitled to by virtue of contributions made during a productive work career.[4] When faced with such a ca-

---

**3.** Although we do not hold that the decision of the ALJ, (that plaintiff's pain was not so severe as to preclude his ability to work), was not supported by substantial evidence, the Court is concerned by the ALJ's almost total reliance on plaintiff's discharge summary from the V.A. Hospital, and the absence of explicit reference to other medical evidence. Although this evidence supports a favorable prognosis for plaintiff, it also bears many flaws. The report refers only to complete relief from pain in plaintiff's hand and not his shoulder. Following plain-

tiff's operation in August, 1977, for excision of the stellate ganglion, his complaints of pain were not about his hand but were in regard to his shoulder. Also, on discharge his physician felt warranted in continuing plaintiff on several forms of medication, including narcotic pain medication.

**4.** The "Social Security disability [program] may not be a private insurance contract, but it obviously reflects a congressional purpose to create expectations and behavior exceedingly similar to what would be brought about by

tastrophy, however, the worker learns the cruel reality and the frustration that attends the almost insurmountable burden of proving disability under the Act.[5]

As a remedial statute the Social Security Act should be broadly construed and liberally applied in favor of disability.[6] Yet, the burden imposed upon the claimant, to prove not only that s/he cannot perform his or her previous work but also that s/he cannot perform any other kind of "substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives . . . or whether he would be hired if he applied for work," [7] is so severe that it has been termed unrealistic. *Johnson,* 612 F.2d at 997; *Williams v. Finch,* 440 F.2d 613, 615 (5th Cir. 1971).

A more realistic standard, more in accord with the expectations [8] of the worker and the intent of the statutory scheme, would allow the claimant disability benefits where it can be shown that (1) the claimant cannot engage in any substantial gainful employment which exists in significant numbers in the claimant's immediate area of residence, and (2) there does not exist a reasonable likelihood given the claimant's age, education and vocational background that s/he would be hired if s/he applied for such work.[9]

There is indeed something wrong when seriously disabled individuals, who by any common sense standard are unable to return to a productive work life, are turned away without assistance. The remedy,

---

mandatory private insurance." Liebman, *The Definition of Disability in Social Security and Supplemental Security Income: Drawing the Bounds of Social Welfare Estates,* 89 Harv.L. Rev. 833, 854 (1976).

5. 42 U.S.C. § 423(d)(2)(A) (1970).

6. Courts in every circuit have so held. *Williams v. Califano,* 590 F.2d 1332 (5th Cir. 1979); *Marcus v. Califano,* 615 F.2d 23 (2nd Cir. 1979); *Mandrell v. Weinberger,* 511 F.2d 1102 (10th Cir. 1975); *Combs v. Gardner,* 382 F.2d 949 (6th Cir. 1967); *Hoffman v. Gardner,* 369 F.2d 837 (8th Cir. 1966); *Rodriguez v. Celebrezze,* 349 F.2d 494 (1st Cir. 1965); *Conklin v. Celebrezze,* 319 F.2d 569 (7th Cir. 1963); *Campbell v. Califano,* 483 F.Supp. 1306 (E.D.Pa.1980); *White v. Califano,* 473 F.Supp. 503 (S.D.W.Va. 1979); *Hernandez v. Califano,* 453 F.Supp. 1218 (D.Idaho 1978).

7. See footnote 5, *supra.*

8. The court's concern for individual worker expectation is fully consistent with the history and conduct of the Social Security disability insurance program. When a judge reverses a denial of benefits, he should be seen as saying that the program's purpose is to assure income related to prior earnings when a claimant can make a sufficient showing of certain sorts of random bad luck, and that the showing made by the claimant is sufficient, in that most persons (1) would want to be covered if they could make such a showing; (2) would expect a disability insurance program to cover them in such circumstances; and (3) are prepared to pay the costs of coverage for all such cases as are likely to arise. * * * The central characteristics of Social Security disability insurance should be

a claimant's climb to a place in the labor force, his loss of that place due to one of a category of external risks we have decided to spread among all workers, and his current inability to achieve income without a degree of effort or suffering that persons generally would regard as unnecessary for someone with this individual's thresholds of pain and discomfort. These are exceedingly individualized determinations, to be sure, but they are necessary if this program is to perform its appropriate task.
89 Harv.L.Rev. at 846–847 (footnotes omitted).

9. This standard parallels the formulation applied by the majority of courts prior to the 1967 amendments to the Social Security Act. This line of judicial authority progressed from the leading pre-amendment case of *Kerner v. Flemming,* 283 F.2d 916 (2nd Cir. 1960) (Friendly, J.). In *Kerner,* Judge Friendly analyzed the need for defining the ability to perform substantial gainful employment in terms of the realistic potential of securing work given the claimant's limitations and the availability of jobs for such an individual. "Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this [work] is available." *Kerner,* 283 F.2d at 921. In the 1967 amendments, Congress overruled the line of authority developed by *Kerner* and its progeny by requiring a national economy test, and by precluding an inquiry into the likelihood that the claimant, given his or her limitations, would be hired. The law today is clearly at odds with the remedial purpose of the social security disability program and disregards the reasonable expectations of workers. *See* 89 Harv.L.Rev. at 850–855.

however, "must be provided by an agency with a heart or the Congress—not by the Courts." *Fuerst v. Secretary of Health, Education and Welfare*, 354 F.Supp. 185, 188 (S.D.N.Y.1973).

The reviewing court can for "good cause" remand a social security disability claim to the ALJ for a further hearing pursuant to 42 U.S.C. § 405(g). This action, like *Johnson* and *Brenem*, presents a situation where due to the deficiencies in the questioning of the vocational expert, there is not enough evidence in the record to support a finding against the plaintiff, but there is also not enough evidence to find him disabled. The Court, therefore, concludes that there is "good cause" to remand to the ALJ for a further hearing on the availability of employment for Mr. Gresham, given the physical and psychological impairments which he has been found to have.

For the foregoing reasons, we remand to the Secretary for a complete development of the record consistent with the views expressed in this opinion.