**Nancy S. TAYLOR, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. No. 85–1046.**

United States District Court, D. Idaho.

July 13, 1988.

John F. Greenfield, Boise, Idaho, for plaintiff.

Maurice O. Ellsworth, U.S. Atty., Jeffrey G. Howe, Asst. U.S. Atty., Boise, Idaho, for defendant.

## MEMORANDUM OPINION AND ORDER

RYAN, Chief Judge.

### I. INTRODUCTION

The plaintiff, Nancy Taylor, appeals to this court from an adverse decision of the Appeals Council denying her claim for disability benefits pursuant to the Social Security Act. Plaintiff has filed a Motion for Summary Judgment asking the court to reverse the decision of the Appeals Council. The Secretary has filed a cross-motion for summary judgment seeking affirmance of the decision denying benefits.

### II. PROCEDURAL HISTORY

Plaintiff first applied for disability benefits in October of 1982 as a result of a work-related back injury suffered in April of 1980. Plaintiff was found not disabled by an Administrative Law Judge (ALJ) on August 8, 1983. This decision was subsequently remanded by the Appeals Council to assess additional medical evidence presented by the plaintiff. A second administrative hearing was conducted. Following the hearing, on August 21, 1984, the ALJ determined that plaintiff's condition would not prevent her from performing her past relevant work as a manager and cashier of a fast-food restaurant. The Appeals Council adopted the recommended decision of the ALJ on March 28, 1985.

On October 2, 1985, United States District Judge Ray McNichols reversed the decision of the Secretary. Judge McNichols noted that, "[i]t flies in the face of the evidence to conclude that the plaintiff is able to perform her past relevant work as a restaurant cook." Order Reversing Decision of the Secretary, filed Oct. 2, 1985, at 2. This finding was based primarily on the fact that plaintiff was essentially confined to a wheelchair or crutches as a result of her back condition. Judge McNichols reversed and remanded to the Secretary for a determination of whether plaintiff had the residual functional capacity to perform sedentary work which was available in the national labor market.

Following the order of remand, the ALJ, on February 13, 1986, determined that plaintiff was disabled as defined in the Social Security Act as of April 22, 1980. On June 6, 1986, the Appeals Council determined that additional evidence should be obtained before a final decision was made on the disability of plaintiff. The Appeals Council ordered the ALJ to obtain a consultative neurosurgical examination and medical assessment of plaintiff's ability to do work-related activity in light of medical evidence that plaintiff was confined to a wheelchair and had urinary tract problems

which resulted in the need for periodic self-catheterization. The Appeals Council also ordered the ALJ to consider how plaintiff's alleged psychological problems would affect her ability to function in an employment environment.

On September 22, 1987, the ALJ entered his recommended decision that the Appeals Council find the claimant was not under a disability as defined in the Social Security Act. While the ALJ found that plaintiff could not perform her past relevant work, he concluded that she had the residual functional capacity to perform sedentary work for which a significant number of jobs in the national economy existed. This recommended decision was based upon testimony received by a Vocational Expert (VE) who concluded that plaintiff could perform sedentary work, including work as a general office clerk and assembly worker. The recommended decision of the ALJ was affirmed and adopted by the Appeals Council on February 8, 1988. Plaintiff now appeals the decision of the Appeals Council.

### III. STANDARD OF REVIEW

To be entitled to disability benefits, plaintiff must establish that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity, and that the impairment is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.1986). The impairment must result from anatomical, physiological or psychological abnormalities that are demonstrable by medically acceptable diagnostic techniques. The burden is upon the plaintiff to prove that she is disabled. *Id.* A prima facie case of disability is established by showing that her impairment prevents her from performing her previous occupation. The burden then shifts to the Secretary to show that the plaintiff can perform other types of work that exists in the national economy given her residual functional capacity, age, education, and work experience. *Id.* A plaintiff's residual functional capacity is based upon what the party can still do despite her physical or mental limitations.

20 C.F.R. § 404.1545(a) (1986). If there is more than one impairment, all of the impairments will be considered in determining the plaintiff's residual functional capacity. The Secretary's decision denying benefits will be disturbed only if it is not supported by substantial evidence or if it is based on legal error. 42 U.S.C. § 405(g).

### IV. FINDINGS OF THE ALJ

In his recommended decision, the ALJ concluded, *inter alia*, that plaintiff suffers from central and right-sided disc herniation, mild to moderate degenerative disc disease, mild congenital formation of the lower lumbar facets producing a mildly unstable back, and a history of urinary tract infections. The objective medical evidence also established that plaintiff suffers from a psychogenic pain disorder; that is, plaintiff displays various physical symptoms for which there are no demonstrable organic causes. This finding is supported by the weight of medical evidence presented before the ALJ; most importantly, the psychiatric evaluation performed by Dr. Hap Myers which was ordered as part of the Appeals Council remand instructions. Dr. Myers noted that there was a dramatic difference between plaintiff's organic disease and her complaints, and that because of plaintiff's deep psychological problems, she had voluntarily placed herself in the wheelchair to lessen her perceived pain. Dr. Myers was convinced that plaintiff was not malingering or a hypochondriac. In accordance with the objective medical evidence, the ALJ concluded that plaintiff's subjective complaints that she is confined to a wheelchair and must have access to toilet facilities every two hours for about ten minutes to self-catheterize herself were credible.

Despite the objective medical findings of both physical and mental limitations, the ALJ concluded that plaintiff had the residual functional capacity to perform sedentary work as a general office clerk or as an assembly worker. The ALJ's finding was as follows:

The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for *sustained standing, walking, lifting over 10 pounds, or work not allowing her to be confined to a wheelchair or not allowing her access to toilet facilities every two hours for 10 minutes at a time [for self-catheterization], or work involving high stress.*

Supplemental Court Remand Transcript at 384 (emphasis added). This finding, as noted *supra*, was based primarily upon the conclusions of the VE.

At the time of the administrative hearing, the ALJ posed the following hypothetical to the VE:

[T]ake a person who is 32 to 40 years of age, has a high school education, past work is of skilled nature but no skills are transferable to other occupational titles. This individual has the following residual functional capacity—is confined to a wheelchair, requires access to toilet facilities every 2 hours for a 10 minute period to empty her bladder, is able to lift 10 pounds maximum, would be contraindicated from working in a job that had a high level of stress....

Supplemental Court Remand Transcript at 524. Based upon this hypothetical, the VE concluded that there were positions available in the national economy to plaintiff in the area of general office clerk and assembly worker. In the area of general office clerk, the VE concluded that there were approximately 274,000 jobs available in the national economy. The VE took this figure of 274,000 and reduced it by 50 percent based upon the hypothetical limitations set forth by the ALJ. With respect to the assembly worker, the VE stated that there were approximately 233,000 positions available nationally. The VE again reduced this 233,000 figure by 50 percent indicating that there would be 126,500 positions available to the hypothetical person with the limitations possessed by the plaintiff.

## V. ANALYSIS

■ In analyzing the conclusions reached by the ALJ and the VE, it must be remembered that in order to "establish that a claimant ... has the ability to engage in any substantial gainful activity ... it must be shown that the claimant can *realistically* perform in existing employment." *Hernandez v. Califano*, 453 F.Supp. 1218, 1222 (D. Idaho 1978). To sustain a finding of no disability, there must be some showing in the record that the plaintiff can actually engage in some reasonably available and substantial gainful activity. *Id.* The mere theoretical ability to engage in some activity is clearly insufficient. *Blanchette v. Schweiker*, 523 F.Supp. 338 (D.Colo.1981).

■ It is also essential that the hypothetical questions posed to the VE set out all the limitations and restrictions of a particular plaintiff, including subjective complaints of pain. *Embrey v. Bowen*, 849 F.2d 418 (9th Cir.1988). If the assumptions in the hypothetical are not supported by the record, the opinion of the VE that the plaintiff has a residual working capacity has no evidentiary value. *Id.*

■ In this case, the hypothetical posed by the ALJ did not realistically set forth all of the limitations that this particular plaintiff possesses. Initially, the ALJ did not address the problems associated with periodic catheterization other than conclusory statements regarding the fact that public restrooms are as clean as private restrooms. Particularly not addressed were those problems which would be associated with the transportation and handling of catheterization devices. In her testimony at the administrative hearing, plaintiff testified that in the catheterization process she was required to use peroxide, benedine, catheterization tubes, gloves, and a washtub with hot soapy water. The hypothetical posed to the VE simply did not confront the problems that would be posed by requiring plaintiff to have all of these devices with her at her workplace and whether there would be a bathroom which would accommodate this catheterization process and proper storage facilities for these items.

Secondly, the hypothetical posed by the ALJ to the VE did not take into account plaintiff's subjective pain testimony that

sustained sitting beyond three hours causes an uncomfortable throbbing in her back requiring her to lie down for thirty minutes. The ALJ rejected this testimony as not credible stating that these complaints were not supported by "any physiologic findings and not supported by her daily activities...." Supplemental Court Remand Transcript at 382. Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the VE's testimony to have any evidentiary value. *Embrey v. Bowen,* 849 F.2d 418, 423 (9th Cir.1988).

In this case, the ALJ completely failed to state what medical evidence suggested that plaintiff's claims of pain were not credible. The weight of the medical testimony presented indicates that due to plaintiff's psychogenic disorder, the pains in her back are very real. It is true that the physiologic findings alone may not support such pain testimony. However, the ALJ has accepted as credible the medical diagnosis by Dr. Myers that plaintiff has deep psychological problems which actually produce pain and incapacitate her. As long as the subjective pain testimony is associated with a clinically demonstrated impairment, credible pain testimony must contribute to a determination of disability. *Cotton v. Bowen,* 799 F.2d 1403 (9th Cir.1986). Finally, it appears that the VE's opinions on the number of positions available in the national market for a person with the limitations demonstrated by plaintiff were speculative and not based upon objective statistical data.

## VI. CONCLUSION

Because the hypothetical posed by the ALJ to the VE did not realistically reflect all of plaintiff's limitations—particularly with respect to problems associated with the transportation and handling of catheterization devices and the subjective pain testimony that plaintiff must lie down for a half hour every three hours—the expert's opinion has no evidentiary value and does not support the ALJ's decision. This finding requires that the court remand plaintiff's case to the Secretary for reconsideration. *Embrey v. Bowen,* 849 F.2d 418, 423 (9th Cir.1988). In remanding, the court is not unmindful of the protracted procedural history of this case. It has been almost six years since plaintiff first applied for benefits under the Act. In light of the protracted nature of this litigation, and the apparent inability of this plaintiff to realistically engage in any substantial gainful employment, the Secretary is instructed to give this case priority upon remand.

## VII. ORDER

Based upon the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the decision of the Appeals Council is REVERSED AND REMANDED for further proceedings consistent with this opinion.