**Donald E. EMBREY,
Plaintiff–Appellant,**

v.

**Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant–Appellee.**

No. 87–6064.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1987.

Decided June 13, 1988.

Ronald B. Eisman, Whittier, Cal., for plaintiff-appellant.

Dennis J. Mulshine, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

**420**

Before BROWNING, Chief Judge, HUG and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The claimant, Donald Embrey, appealed to the district court the decision of the Secretary of Health and Human Services denying his application for Social Security disability benefits. The district court granted summary judgment for the Secretary, affirming the administrative decision. We reverse the district court and remand the case to the Secretary for further proceedings.

FACTS AND PROCEEDINGS BELOW

Donald Embrey was born in 1935 and completed twelve years of schooling. He has worked in various capacities in the hospital equipment repair business. In 1979, Embrey suffered a heart attack. He was hospitalized for chest pains in May of 1982 and, while hospitalized, sustained a second heart attack. He underwent quadruple coronary bypass surgery in July of 1982. Embrey also suffers from back problems: he was operated on for a ruptured disc in 1969 or 1970 and in recent years has experienced increasing pain in his back, hips, and legs. Embrey has also been diagnosed as suffering from diabetes mellitus.

Embrey stopped working in April of 1982, shortly before his hospitalization, because of his medical problems. He remained on his employer's payroll until February of 1983, when he was terminated, but after his heart surgery he apparently performed only some telephone and paperwork at home. He worked for another employer on a trial basis from April to June of 1983, but his medical problems caused him to leave that job as well and he has not worked since that time. Embrey applied for disability benefits in August of 1984, claiming that he was unable to work as of April 23, 1982.[1] The application listed Embrey's disabling conditions as herniated disc and acute lumbosacral strain, heart

disease with continuing arrythmia, and diabetes mellitus.

Embrey's application was denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). At the hearing, which was held on October 21, 1985, Embrey testified as to his condition. He stated that he must stay in bed for one to two days every seven to ten days because of fatigue, and must also lie down for one to two hours every day. He can walk five to six blocks if he rests along the way, and can stand for one hour. He stated that he could sit for two hours but it would be difficult for him to get up, and that because of his back he sometimes has trouble getting out of bed in the morning. He believed he would be able to lift and carry 25 pounds, but could not lift a 50–60 pound tool box. He experiences a constant dull ache in his back, which worsens after 15 to 20 minutes of sitting, and shooting pains in his back at least three or four times a day. He also has cardiac arrythmia and experiences chest pains two or three times a week. His diabetes can make him feel sick, light-headed, and dizzy; it also causes blurred vision and a burning sensation in his feet. Embrey also testified that he suffers from arthritis which can limit the use of his right hand.

In addition to Embrey's testimony, the ALJ considered the medical evidence regarding Embrey's various conditions and the reports of his doctors. In the view of Embrey's treating orthopedist, Dr. Macs, Embrey is permanently disabled. A second doctor, consulting neurologist Dr. Goldman, reported that Embrey met the requirements for Social Security disability. Embrey's treating cardiologist, Dr. Hermann, stated that Embrey could not tolerate any job involving a "considerable degree of physical activity," and later stated that Embrey was "on total disability" pending completion of a cardiac rehabilitation program. The family physician who treated Embrey for his diabetes, Dr. Baker, indicated that Embrey could not stand be-

---

1. Embrey had previously submitted an application for disability benefits in October of 1982, based solely on his heart condition. That application was denied and Embrey did not appeal.

cause of the pain in his feet and could sit for only 30 minutes (after which it took him five minutes to get up); that he could do no lifting or carrying and only limited bending; and that he could walk only five blocks. Dr. Baker, too, concluded that Embrey was permanently "unemployable."

The ALJ found that Embrey has not engaged in substantial gainful activity since April 23, 1982. From the medical evidence, the ALJ concluded that Embrey suffers from mild coronary artery disease as a result of his heart attack and bypass surgery; from lumbar spine stenosis; and from diabetes mellitus with mild radiculopathy controllable with medication. He found that Embrey's assertions of disabling pain and substantial work limitations were not credible, and that the physicians' opinions of total disability were "unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings." Based on the testimony of a vocational expert, the ALJ also found that while Embrey could no longer perform his past work as a technical specialist for hospital equipment, he did have the residual functional capacity to perform the full range of sedentary to light work. He accepted the expert's opinion that Embrey could return to his former job as a service coordinator and could also perform a number of other available jobs. Therefore, the ALJ concluded that Embrey was not disabled.

Embrey appealed the denial of benefits to the district court, which granted summary judgment for the Secretary. Embrey appeals to this court pursuant to 42 U.S.C. § 405(g) (1982). He claims that the ALJ improperly rejected the opinions of Embrey's physicians and that the hypothetical on which the vocational expert based her opinion was not supported by the record. He also contends that his case should be remanded to the Secretary for reconsideration in light of new evidence. We find all of these claims persuasive.

## DISCUSSION

### I. *Treating Physicians' Opinions*

█ We have made it clear that the medical opinions of a claimant's treating physicians are entitled to special weight and that, if the ALJ chooses to disregard them, "he must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986); *see Summers v. Bowen*, 813 F.2d 241, 243 (9th Cir.1987); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton*, 799 F.2d at 1408. Even if a treating physician's opinion is controverted, the ALJ must provide specific, legitimate reasons for rejecting it. *Id.*

█ The ALJ failed to meet that burden here. While his opinion does review the medical evidence, it concludes only that: The opinions of total disability tended [sic] in the record are unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings. The duration of the claimant's stress treadmill testings and relative lack of positive findings, the results of other laboratory and x-ray testing, the objective observations of the physicians of record, all preponderate toward a finding that the claimant has never lost the residual functional capacity for light work for any period approaching 12 months.

To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.[2] The ALJ must do more than offer his conclusions. He must set forth his own interpre-

---

**2.** In this case, we find no support in the record for the ALJ's assertion that the objective evidence "preponderate[s] toward a finding" of no disability. To the contrary, the medical evidence appears to fully support the physicians' opinions that Embrey is disabled.

tations and explain why they, rather than the doctors', are correct. Moreover the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of those physicians must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail. *See Delgado v. Heckler,* 722 F.2d 570, 574 (9th Cir.1983).

Here, the ALJ does not give sufficiently specific reasons for rejecting the conclusion of Dr. Macs, Embrey's treating orthopedist, that Embrey is "permanently disabled from his medical condition as well as his orthopaedic problems." Nor does the ALJ explain why he disagrees with Dr. Baker's conclusion that Embrey is permanently unemployable, or give reasons for rejecting Dr. Baker's detailed assessment of Embrey's capacity for standing, lifting, carrying, and sitting for longer than 30 minutes. Instead, he merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects. This approach is inadequate.

Three treating physicians and one consulting physician determined that Embrey is disabled. The ALJ reached the opposite conclusion. Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings. *See Cotton,* 799 F.2d at 1408. The ALJ failed to do so here. Therefore, we must remand Embrey's case to the Secretary for proper consideration of the physicians' evidence. *See id.* at 1408–09.[3]

## II. *Vocational Expert Testimony*

■ If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work. *Gamer v. Secretary of Health and Human Services,* 815 F.2d 1275, 1278 (9th Cir.1987). Without other reliable evidence of a claimant's ability to perform specific jobs, the Secretary must use a vocational expert to meet that burden. *Id.* at 1279. Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights. *Id.* at 1280; *See Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 578 (9th Cir.1988) (Pregerson, J., concurring) ("The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir.1984); *see Kornock v. Harris,* 648 F.2d 525, 527 (9th Cir.1980) (testimony of vocational expert must be reliable in light of medical evidence in order to qualify as substantial evidence).

■ Here, the hypothetical posed to the expert by the ALJ envisioned a claimant with the following characteristics: Embrey's age, education, and past work experience; suffering from "a cardiac orthopedic and diabetic condition"; able to walk five to six blocks at a time without a rest; able to stand for an hour at a time and sit for one to two hours at a time, and to alternate between sitting and standing throughout an eight-hour workday; limited to carrying no more than 20 pounds occasionally but able to lift and carry ten pounds frequently; and unable to work with his arms or lift above head level. Based on this hypothetical, the vocational expert stated that Embrey could return to his previous job as service coordinator or

---

**3.** The ALJ must either accept the opinions of Embrey's treating physicians or give specific and legitimate reasons for rejecting them. Such reasons will, of course, be subject to further review by this court.

perform such jobs as hospital maintenance worker or phone dispatcher.

The opinion of the expert cannot be relied upon by the Secretary, because the hypothetical is not supported by the record and does not reflect Embrey's limitations. Specifically, the assumption that Embrey can alternate between sitting and standing for a full eight-hour workday has no support in the record, and indeed is flatly contradicted by Embrey's own testimony and that of Dr. Baker.

Moreover, the hypothetical did not take account of Embrey's other limitations, specifically his need to rest periodically, his back and chest pains, and the dizziness and blurred vision caused by his diabetes. With regard to Embrey's testimony, the ALJ found only that "the totality of the evidence of record does not substantiate the claimant's allegations of having to lie down during the day nor of his asserted pain and other work limitations." Again, this finding does not achieve the level of specificity which we require in order for the ALJ to disregard a claimant's excess pain testimony—that is, subjective pain testimony not supported by objective medical evidence. *See Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 583–84 (9th Cir.1988); *Gamer,* 815 F.2d at 1279; *Cotton,* 799 F.2d at 1407. Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value. *Varney,* at 585. That was not the case here.

Similarly, Dr. Baker indicated that Embrey could do no lifting or carrying, that he could not stand, and that he could sit for only 30 minutes before experiencing pain. As we have explained above, the record does not contain any specific and legitimate reasons for rejecting Dr. Baker's findings; therefore these limitations should also have

been included in the hypothetical. *See Kornock,* 648 F.2d at 527 (ALJ and vocational expert should have considered claimant's medical limitations as reported by treating physician).

Because the hypothetical posed by the ALJ to the vocational expert did not reflect all of Embrey's limitations, the expert's opinion has no evidentiary value and cannot support the ALJ's decision.[4] This requires that we remand Embrey's case to the Secretary for reconsideration. *See Varney,* at 585; *Gamer,* 815 F.2d at 1280.

### III.  *Consideration of New Evidence*

■ Embrey has asked us to remand his case for reconsideration in light of new evidence, specifically a June 1987 report from Dr. Goldman. The Social Security Act allows us to order the Secretary to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (1982).

Both requirements are met here. The report is clearly material; it reinforces Dr. Goldman's continued opinion that Embrey met the requirements for Social Security disability and also discusses the expected duration of Embrey's condition as of September 1985. *See* 42 U.S.C. § 423(d)(1)(A) (1982) (disability must be expected to last at least 12 months). As to the second prong, we have said that the good cause requirement "often is liberally applied, where, as in the present case, there is no indication that a remand for consideration of new evidence will result in prejudice to the Secretary." *Burton v. Heckler,* 724 F.2d 1415, 1417–18 (9th Cir.1984). In *Burton,* we held that the fact that the additional evidence could not have been presented at the time of the ALJ's decision was sufficient to establish good cause. *Id.* at 1418; *see Ward v. Schweiker,* 686 F.2d 762, 764

---

**4.** When Embrey's attorney asked the expert if Embrey could work as a phone dispatcher if he needed to lie down during the day or could not read due to blurred vision, the expert responded no.

(9th Cir.1982).[5] Because Embrey's additional evidence could not have been presented at the time of the administrative hearing, this requirement is also met. Accordingly we remand on this ground as well, and order the Secretary to consider Dr. Goldman's June 1987 report.

### CONCLUSION

We reverse the district court's grant of summary judgment and remand the case with directions to remand to the Secretary for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**5.** Dr. Goldman's report could also not have been introduced in the district court, which granted summary judgment on April 29, 1987. *See Allen v. Secretary of Health and Human Services,* 726 F.2d 1470, 1473 (9th Cir.1984). The report is distinguishable from the evidence we rejected in *Allen.* Allen attempted to introduce the results of new tests and evaluations by new expert witnesses. Embrey's evidence—like Burton's, *see* 724 F.2d at 1417—consists of a recent letter from his doctor. Rather than attempting to raise new issues, the evidence represents the ongoing medical evaluation of a consulting physician who had already participated in the disability determination process. Therefore we find *Burton* rather than *Allen* controlling.