35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Monte O. THOMPSON, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-17071.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 18, 1994.
Decided Sept. 13, 1994.
 
 Before: Reinhardt and Leavy, Circuit Judges, and McLaughlin, District Judge.*
 MEMORANDUM**
 I.
 Monte Thompson appealed to the district court the decision of the Secretary of Health and Human Services denying his application for Social Security disability benefits made pursuant to 42 U.S.C. Sec. 1381 et seq. (1982 & Supp. V 1987). The district court granted summary judgment for the Secretary, finding that the Secretary's prior determination that Thompson's disabilities did not render him unable to perform his prior relevant work was supported by substantial evidence. Because the Secretary's determination is not supported by substantial evidence and the medical evidence amply demonstrates that Thompson is incapable of performing his past relevant work, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with our disposition.
 II.
 Thompson, who was born on August 14, 1933, alleges the inability to work since April, 1987 due to decreased vision resulting from a detached retina in his left eye and a macular hole in the retina of his right eye. He filed an application for disability benefits in March, 1989.[1] The application was denied initially and on reconsideration by the Social Security Administration after finding him not to be disabled. Thompson then requested an administrative hearing. An administrative law judge (ALJ) affirmed the denial of his application; the Appeals Council denied his request for review. Thompson appealed to the United States District Court for the Northern District of California. The district court granted the Secretary's motion for summary judgment, finding that the denial of the application was supported by substantial evidence. That decision is now before us on Thompson's timely appeal.
 The medical evidence before the Secretary and the district court revealed that Thompson experienced a sudden loss of vision in his left eye in April, 1987. A retinal detachment was diagnosed by Dr. Eric Johnson, who referred Thompson to another ophthalmologist, Dr. Dan R. Lightfoot, for surgical repair of the retina. Dr. Lightfoot operated on Thompson's left eye and performed additional laser surgery, but vision in the eye remains at 20/200 due to retinal surface wrinkling. In addition, Thompson began in September, 1987 to complain of a significant loss of vision in his right eye. A macular hole was subsequently diagnosed. An operation was performed in 1989. The vision in Thompson's left eye has since stabilized at 20/30, with partial occlusion of his visual field.
 In addition to his vision problems, Thompson is afflicted with what the medical record describes as "a severe history of terminal tremor, right hand more than left, which is worse when he attempts to do fine coordinated activities, such as writing or printing." Thompson was treated for this condition by Dr. Kurt Osborne, a neurologist. Dr. Osborne prescribed Mysoline in an effort to decrease the tremor and improve Thompson's coordination. Although the drug improved the tremor somewhat, it caused Thompson to feel drowsy and slowed down his reaction time. Dr. Osborne recommended that the medication continue. He noted, however, that Thompson "would probably never become completely normal."
 Prior to the onset of his disabilities, Thompson had been employed since 1968 as a "stationary engineer supervisor" at the Louisiana Pacific Pulp Mill, where he supervised maintenance of the mill's steam boilers, turbine generators and water treatment plant. Thompson's job required him periodically to inspect the inner workings of the boilers, which entailed significant climbing. In addition, Thompson's job required him to be able to read electrical schematics and to monitor various gauges. He was required to work near heavy equipment and moving machinery, occasionally in dim lighting. In event of an emergency, he was responsible for the evacuation of the 12-14 persons under his charge.
 By October of 1987, Thompson's vision problems had become sufficiently pronounced that his employer placed him on disability. After Thompson underwent his two eye operations his condition stabilized but did not improve significantly. He attempted to return to work in 1987, but after less than a month he and his employers agreed that his disabilities continued to pose a safety hazard, and Thompson was again placed on disability.[2]
 At his hearing before the ALJ, Thompson testified that he can see "fairly well" out of his right eye, except for a "little black dot" that obscures a portion of his view, but cannot see "at all" out of his left eye. He stated that he experiences double vision on close reading, which is eliminated if he covers his left eye. His tremor is "a lot better" with the medication, but has not disappeared. He stated that because of his tremor he cannot work with a screwdriver or other small hand tools. Thompson also stated that because of his lack of binocular vision and the resultant loss of depth perception, he experiences difficulty walking over uneven surfaces. He testified that he does some driving (with the assistance of his wife, who watches one side of the road), performs some light housekeeping chores, watches television, and reads magazines (although not without discomfort). Thompson stated that he had agreed with his employers to stop working because his vision problems made the job too dangerous for himself and for the workers he was entrusted to supervise. He stated that he was unable to see well enough in dim light to work around the machinery at the plant. He also could not read the electrical schematics and gauges necessary to the plant's operation.
 Dr. Johnson testified that Thompson continues to suffer from severe visual loss with essential blindness in his left eye and reduced vision in his right. Thompson's residual vision is affected by the macular hole, which creates a black central spot in his visual field, caterpillar-like "floaters" across his visual field, and double vision when reading or performing close work if his left eye is not covered. Dr. Johnson opined that Thompson is "able to read with some difficulty and certainly is not physically incapacitated," but that he would be unable to return to his former work if it involved working around moving machinery or required sharp vision.
 A vocational expert witness, Jonathan Dean Stubbs, testified that claimant's past work as a stationary engineer supervisor could be classified as light, skilled employment. He stated that Thompson's past work was "unique". Responding to a hypothetical question by the ALJ instructing him to assume that Thompson had no vision (or visual acuity of 20/200) in his left eye, and right eye visual acuity of 20/30, that he experienced double vision at reading distance which could be eliminated by closing the left eye, that he was right handed, that he had a relatively mild essential tremor affecting his right arm resulting in slight tremulous breakdown of his hand writing, and that he was able to print slowly and laboriously with his left hand, the expert testified that in light of Thompson's limited vision and right hand tremor, he could perform "perhaps five percent' of the stationary engineer jobs for which he was qualified. The expert stated that a maximum of 350 such jobs existed in California and 2,500 in the national economy. None of these jobs existed in the area of Thompson's residence. In response to a question from Thompson's counsel, the expert also testified that if Thompson's vision problems or tremor prevented him either from 1) using small hand tools or 2) climbing, he would not be able to work at any of the stationary engineer jobs.
 III.
 We review the district court's grant of summary judgment de novo. Miller v. Heckler, 770 F.2d 845 (9th Cir.1985). We will set aside the denial of Thompson's benefits if "the Secretary's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985) (emphasis omitted).
 A claimant is disabled, and therefore eligible to receive disability benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. Sec. 1382c(a)(3)(B) (1982). In determining whether Thompson is disabled, the Secretary must follow the 5-step evaluation process set forth in 20 C.F.R. Sec. 404.1520(a)-(f). To be eligible for benefits, Thompson must 1) not presently be performing work that constitutes "substantial gainful activity," 2) have a "severe impairment," and either 3) have an impairment or combination of impairments of equal severity and duration as those listed in the appendix of disabilities (see 20 C.F.R. part 404, Subpart P, Appendix 1), or be prevented by his impairment from performing both 4) "past relevant work," and 5) "any other work."
 The fourth step is the one at issue here. Thompson contends that the ALJ's conclusion that he is capable of performing his past relevant work is unsupported by substantial evidence. Thompson argues that the vocational expert's testimony that he could perform "perhaps five percent" of his past relevant work was based on a defective hypothetical posed by the ALJ, one that failed to consider Thompson's inability to climb or to use small hand tools, and is thus entitled to no weight. We agree with Thompson's contention: it is clear from the uncontroverted medical evidence that Thompson cannot climb or use small hand tools and thus cannot perform his past relevant work. Thus, we need not decide here whether the minimal number of jobs that would be available in the area in which Thompson resides is sufficient to warrant a finding that his past relevant work is not available.
 The ALJ's hypothetical was defective first because it did not instruct the vocational expert to consider Thompson's inability to climb. We have held that hypothetical questions posed to a vocational expert "must be accurate, detailed, and supported by the medical record," Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 578 (9th Cir.1988) (Pregerson, J., concurring), and "must set out all the limitations and restrictions of the particular claimant...." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988) (citing Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir.1987)) (emphasis in original). The uncontroverted testimony of Thompson's treating physician, Dr. Johnson, made clear that Thompson's eye problems, including his lack of binocular vision, caused him to suffer a significant loss of depth perception. Vocational consultant Stubbs concurred, and also noted that due to Thompson's loss of depth perception he experienced difficulty walking on uneven terrain. Given these severe limitations on his mobility, it is difficult to imagine that Thompson is able to climb safely. It is clear that the ALJ erred by not including Thompson's inability to climb in the hypothetical.
 Additionally, we have long held that if the ALJ is to disregard limitations posited by the claimant, he must set forth specific and legitimate reasons, supported by the record, for excluding those limitations from the hypothetical. Embrey, 849 F.2d at 423. Otherwise, "those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value." Id. (citation omitted). The ALJ failed, however, to provide any rationale for his refusal to include Thompson's inability to climb in the hypothetical. Accordingly, the ALJ's hypothetical was incomplete and cannot serve as the basis for denying Thompson disability benefits.
 The ALJ's hypothetical was also insufficient because it did not instruct the vocational expert to consider Thompson's inability to use small hand tools. The ALJ found "generally credible" Thompson's testimony that he had limited dexterity in his dominant right hand due to his tremor, that he was unable to write clearly with that hand, and that he was unable to operate a screwdriver or other small hand tools with that hand. This testimony is consistent with the medical record; Dr. Osborne noted that Thompson's coordination, though somewhat improved by medication, would likely never be completely normal.
 Nevertheless, the ALJ refused to include inability to operate a screwdriver or other small hand tools as a factor in the hypothetical. In support of this decision, the ALJ stated that if Thompson could not operate a screwdriver with his right hand, then he could operate it using both hands. While this may be true, it is irrelevant. Screwdrivers must often be operated with one hand while the other hand is used to hold a screw or wrench. Screwdrivers and other small hand tools must also often be operated with one hand in close quarters, in situations where a two-handed grip is impossible. Given the substantial limitations imposed by Thompson's tremor on his ability to use small hand tools, the ALJ also erred in not including this limiting factor in the hypothetical.
 In sum, the medical record makes clear that the ALJ should have directed the vocational expert to include Thompson's inability to climb and to use small hand tools as factors in his analysis. Because the hypothetical posed by the ALJ to the vocational expert was incomplete, the vocational expert's testimony that Thompson is capable of performing "perhaps five percent" of his past relevant work is of no moment. Such error would ordinarily require us to remand to the Secretary with instructions to pose a complete hypothetical to the vocational expert. See Varney v. Secretary of Health and Human Services, 846 F.2d 581 (9th Cir.1988). However, because Thompson's counsel succeeded in placing the proper hypothetical before the vocational expert, we rely on the vocational expert's testimony that either inability to climb or to use small hand tools, added to Thompson's other limitations, would render him unfit to perform his past relevant work. Thus, Thompson meets the requirements of step four. We therefore remand to the Secretary to determine whether Thompson's disabilities prevent him from performing other work available in the national economy, in accordance with 20 C.F.R. Sec. 404.1520(f). If they do, Thompson will be entitled to disability payments. Even if they do not, the Secretary must determine whether Thompson is nevertheless entitled to a medical-vocational allowance pursuant to 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2.
 The judgment of the district court is
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Linda H. McLaughlin, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Thompson had previously filed a disability claim in 1987 that was denied initially and on reconsideration. No appeal was taken
 
 
 [2]
 The medical record also contains a vocational rehabilitation report authored by Joel Turgesen, M.A., a vocational consultant. Turgesen stated that Thompson's reduced vision and resultant lack of depth perception precluded him from working around moving machinery and thus from returning to his former work. He thought that Thompson would need substantial further vocational training to return to work at even 75% of his former salary