46 F.3d 1138
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert ARNETT, Plaintiff-Appellant,
v.
Donna SHALALA, Defendant-Appellee.
 No. 93-15972.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 14, 1994.
Decided Jan. 10, 1995.
 
 Before: TANG, REINHARDT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robert Arnett seeks Supplemental Security Income disability benefits because of his diagnosed antisocial personality disorder and heroin addiction. He argues that the decision of the Administrative Law Judge ("the ALJ") denying him benefits was not supported by substantial evidence and that the ALJ committed errors of law in his decision. Specifically, Arnett asserts that the ALJ erred in disregarding the opinion of his treating physician and by failing to consider Arnett's inability to function outside of a highly structured environment. We remand to the Secretary, because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the testimony of the treating physician. In addition, the ALJ did not determine whether the claimant's past work in prison and in a highly structured job placement constituted "substantial gainful activity." On remand, the Secretary should reconsider whether the claimant's condition meets or equals the listings; if it does not, she should determine whether his past work was substantial gainful activity.
 
 I. Treating Physician's Opinion
 
 3
 The ALJ found that Arnett was "not disabled," because he did not meet a listed impairment and was capable of returning to his past relevant work. In reaching this conclusion, the ALJ rejected the opinion of Arnett's treating physician, Dr. Pouteau, relying instead on the testimony of a medical advisor, Dr. Hannan, who had neither examined nor treated the claimant.[1] Although the ALJ recognized that the claimant would "do very poorly in an unstructured setting," the ALJ concluded that Arnett could still perform his past work "in food service and for Delancy Street [a highly structured placement for drug addicts] in a variety of positions."
 
 
 4
 The ALJ rejected Dr. Pouteau's conclusions on the grounds that they were "not fully supported by the medical findings." He failed to give weight to the subjective aspects of the treating physician's opinion, as our cases require. Although the Secretary has discretion to resolve questions of credibility and conflicts in testimony, the testimony of the claimant's treating physician must be given special weight. Burkhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir.1988). If there is a conflict between the opinions of a treating physician and an examining physician, the Secretary must credit the treating physician's opinion unless she provides "specific and legitimate" reasons for refusing to do so. Any such reasons must be supported by "substantial evidence" in the record, Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983), and must be "clear and convincing." Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir.1989). The ALJ may not reject the treating physician's opinion merely by stating that it is unsupported by objective findings--rather the ALJ must give sufficient weight to the "subjective aspects" of the treating doctor's opinion. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1988).
 
 
 5
 The claimant's treating physician (Dr. Pouteau) and the medical advisor (Dr. Hannan) agreed on Arnett's diagnoses: heroin addiction and antisocial personality disorder. Of course, the presence of these underlying conditions is not enough to establish that the claimant is disabled. Whether or not Arnett's heroin addiction and personality disorder prevent him from performing substantial gainful activity depends on the functional limitations that result from these underlying impairments. See Corrao v. Shalala, 20 F.3d 943, 950 & n. 5 (9th Cir.1994) (concluding that claimant with heroin addiction and antisocial personality disorder was disabled, because of marked functional limitations resulting from these conditions).
 
 
 6
 Dr. Pouteau and Dr. Hannan disagreed on the degree to which Arnett's diagnosed personality disorder and substance abuse disorder limit his ability to function. At the claimant's hearing, Dr. Pouteau assessed the claimant's functioning in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) deterioration or decompensation in work or work-like settings. These four areas of functioning correspond to those specified in the Psychiatric Review Technique Form (PRTF), which in turn corresponds to the "Listing of Impairments" contained in 20 C.F.R.Pt. 404, Subpt. P, App. 1, Secs. 12.00-12.08. See Corrao, 20 F.3d at 950.[2] Dr. Pouteau testified that the claimant is markedly limited in his activities of daily living and social functioning, and that he has deficiencies of concentration, persistence, or pace resulting in the frequent failure to complete tasks in a timely manner. At the hearing, Dr. Pouteau explained that these findings were based on his personal observations over a two-year period, on the claimant's history, on the claimant's statements, on reports from other physicians, and on the claimant's probation report.
 
 
 7
 The only contradictory evidence was the testimony of Dr. Hannan, who ignored the testimony of both the claimant and Dr. Pouteau with respect to the relevant areas of functioning. In finding that Arnett was not severely restricted in his activities of daily living, Dr. Hannan cited only the claimant's ability to groom, bathe, walk, and talk. Yet Social Security regulations explicitly list several other activities--such as cleaning, shopping, cooking, taking public transportation, and maintaining a residence--as activities of daily living that the Secretary must consider in assessing mental impairments. 20 C.F.R.Pt. 404, Subpt. P, App. 1, Sec. 12.00(C)(1). Dr. Pouteau offered uncontradicted testimony that Arnett is unable to prepare his own meals, to plan a menu, to maintain a dwelling, or to raise money to support himself. Dr. Pouteau also testified that Arnett was "pathologically dependent" on his parents, who care for virtually all his basic needs. Dr. Hannan did not address these specific limitations, and stated that he did not know whether Arnett's drug use would interfere with activities of daily living.
 
 
 8
 Nevertheless, the ALJ accepted Dr. Hannan's opinion that the claimant was only slightly limited in his activities of daily living, stating that the claimant's testimony contradicted Dr. Pouteau's testimony. In fact, Dr. Pouteau's testimony that Arnett cannot cook, clean, or maintain a household was entirely consistent with the claimant's testimony. The claimant's testimony that he helped his father weed for approximately 45 minutes the day before the hearing does not contradict Dr. Pouteau's testimony that he is markedly limited in activities of daily living. Whether a claimant is markedly restricted in this area depends not on the number of activities in which he is restricted, but on the "overall degree of restriction." Id. The Secretary is required to consider the individual's capacity to initiate and participate in these activities "independent of supervision and direction." Id. The ALJ's decision conflicts with Social Security regulations requiring the Secretary to take into account the claimant's inability to cook, clean, and maintain a household by himself, and his almost total dependence on his parents for his basic needs.
 
 
 9
 Dr. Pouteau also testified that the claimant was markedly limited in social functioning. Here again, the ALJ erroneously rejected the treating physician's testimony, in favor of the testimony of Dr. Hannan, this time stating that there was "no evidence to indicate the claimant is unable to socialize." The ALJ cannot reject the opinion of a treating physician merely by stating that the opinion is not supported by objective findings. Rodriguez, 876 F.2d at 762. Dr. Pouteau based his conclusion regarding the claimant's social functioning on the claimant's undisputed history, on uncontradicted evidence regarding the claimant's limited contact with other people, and--perhaps most importantly--on his observations as a mental health professional specializing in dually diagnosed patients. The ALJ's opinion fails to give sufficient weight to the subjective aspects of Dr. Pouteau's opinion regarding Arnett's social functioning. See id. at 762. He does not provide any reasons for discounting Dr. Pouteau's uncontradicted testimony regarding Arnett's impersonal and cold demeanor with everyone, nor the corroborating report of Dr. Hill, stating that the claimant "gives off an unfriendly and dull and depressed quality." In fact, the ALJ cites no specific evidence (other than Dr. Hannan's unsupported opinion) contradicting Dr. Pouteau's testimony that the claimant is markedly limited in his social functioning.
 
 
 10
 As to the third category, deficiencies of concentration, persistence, or pace, Dr. Pouteau testified that Arnett's impairment would result in the "frequent" failure to complete tasks in a timely manner. In contrast, Dr. Hannan testified that the claimant's limitations would be "seldom" and the ALJ adopted this conclusion. The sole basis for Dr. Hannan's opinion was the report of Dr. Hill, an examining physician, who indicated that the claimant could perform routine, repetitive tasks for six hours out of an eight-hour day. However, a review of Dr. Hill's report largely supports Dr. Pouteau's conclusion that the claimant has great difficulty functioning outside highly structured, well-supervised settings. Dr. Hill found the claimant to be unfriendly, dull and depressed and noted that he has "little support in the community for help." For these reasons, Dr. Hill concluded that his outlook was very dim. Even if Dr. Hill's remarks could be construed as contradicting Dr. Pouteau's testimony, we would be required to remand because the ALJ gave no specific reasons for preferring the testimony of Dr. Hill to that of Dr. Pouteau.
 
 
 11
 As we have noted, the ALJ failed to give sufficient weight to the subjective aspects of the treating physician's opinion as our cases require. See Embrey, 849 F.2d at 421-22. His reasons for rejecting Dr. Pouteau's opinion were neither specific and legitimate nor supported by substantial evidence. On remand, the Secretary should reconsider the question of the weight to be given Dr. Pouteau's testimony.
 
 II. Past Relevant Work
 
 12
 The ALJ also erred in failing to explain whether the claimant's work in prison and in a highly structured work environment constituted "substantial gainful activity." The ALJ concluded that Arnett was not disabled, because he was capable of returning to his past work in food service (work done while in prison) and at Delancy Street (a highly structured environment for drug addicts).
 
 
 13
 To be considered disabled, the claimant must be unable to perform "substantial gainful activity." 20 C.F.R. Sec. 404.1505(a). If the claimant does not meet the listings, but is capable of performing "past relevant work," then he must be found "not disabled." 20 C.F.R. Sec. 404.1520(d) & (e). However, a claimant's previous jobs are not considered "past relevant work" if those jobs did not constitute "substantial gainful activity." 20 C.F.R. Sec. 404.1565(a). Social Security regulations provide detailed guidelines for assessing whether work activity should be considered "substantial gainful activity." See 20 C.F.R. Secs. 404.1571-404.1576.
 
 
 14
 Although the ALJ found Arnett capable of performing the jobs he did while in prison or at Delancy Street, there is no evidence in the record from which we can discern whether these jobs constitute substantial gainful activity and can thus be deemed "past relevant work." The only evidence of record pertaining to Delancy Street was Dr. Pouteau's testimony that this was a "highly structured placement." The ability to work only in highly structured environments, such as sheltered workshops, does not establish the capacity to engage in substantial gainful activity. See Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir.1988); Thompson v. Schweiker, 665 F.2d 936, 939 (9th Cir.1982). The Secretary may not find the claimant not disabled merely because he retains the ability to function in a highly structured and supportive setting.[3]
 
 III. Conclusion
 
 15
 On remand, the Secretary should reconsider the weight to be given Dr. Pouteau's testimony, and in light of that determination reconsider whether Arnett's condition meets or equals the listings. If the Secretary again determines that Arnett's condition does not meet or equal one of the listed impairments, she should determine whether his past work experience constitutes "substantial gainful activity." If it does not, the Secretary must consider whether the claimant is capable of performing any other kind of work that is substantial gainful activity.
 
 
 16
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The purpose of Dr. Hannan's testimony was to assist the ALJ in completing the psychiatric review technique form. Where the claimant has a mental impairment, Social Security regulations require the Administration to complete this document at each level of administrative review, and to append the document to its decision. 20 C.F.R. Sec. 404.1520a(d). The ALJ is permitted, but not required, to call a medical advisor to assist him in completing this document. 20 C.F.R. Sec. 404.1520a(d)(1)
 
 
 [2]
 Social Security uses the Psychiatric Review Technique Form to assess whether the claimant's condition meets or equals one of the listed mental impairments and is therefore presumed disabled. See 20 C.F.R. Sec. 1520a(c). To meet the listings for "Substance Addiction Disorders" or "Personality Disorders," the claimant's condition must result in three of the following functional restrictions:
 
 
 [1]
 Marked restriction of activities of daily living
 
 
 [2]
 Marked difficulties in maintaining social functioning
 
 
 [3]
 Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)
 
 
 [4]
 Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)
 
 
 [20]
 C.F.R.Pt. 404, Subpt. P, App. 1. Sec. 12.08(B). If the claimant's condition does not meet a listed impairment, the Secretary must then determine whether the claimant is capable of performing his past work or any other job. 20 C.F.R. Sec. 1520(e). If the claimant is not capable of performing his past relevant work, the Secretary must determine whether there is any other job that the claimant is capable of performing despite his impairments. 20 C.F.R. Sec. 404.1520(f)
 
 
 [3]
 Social Security regulations specifically require the Secretary to evaluate the capacity of mentally impaired claimants to function in an unstructured setting:
 Highly structured an supportive settings may greatly reduce the mental demands placed on an individual. With lowered mental demands, overt signs and symptoms of the underlying mental disorder may be minimized. At the same time, however, the individual's ability to function outside of such a structured and/or supportive setting may not have changed. An evaluation of individuals whose symptomology is controlled or attenuated by psychosocial factors must consider the ability of the individual to function outside of such highly structured settings.
 
 
 [20]
 C.F.R.Pt. 404, Subpt. P, App. 1, Sec. 12.00(F) (emphasis added)