78 F.3d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gilbert HENDERSON, Plaintiff-Appellant,
v.
Shirley S. CHATER,* Commissioner of Social
Security, Defendant-Appellee.
 No. 94-36069.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 10, 1996.
Decided Feb. 29, 1996.
 
 Before: JOHN T. NOONAN, JR., LEAVY and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Gilbert Henderson brought this action in district court pursuant to 42 U.S.C. § 405(g) seeking review of the Secretary's final order denying his application for social security disability insurance benefits. The district court entered judgment in the Secretary's favor. Henderson timely appealed. We reverse.
 
 I. ANALYSIS
 
 3
 A. Did the ALJ fail to provide adequate reasons for disregarding the testimony of Henderson's physician?
 
 
 4
 From 1981 to 1984, Henderson underwent a series of six back surgeries, each of them progressively more severe.[1] Henderson's physician, Dr. Bertucci, Jr., reported on October 4, 1985, that "because of the chronicity of his low back problem and the fact that he has had at least six low back operations that I am aware of, he is totally and permanently disabled to do any type of work especially that involving physical labor." The ALJ rejected Dr. Bertucci's opinion on the grounds that he had not seen Henderson for a year prior to making the report and that another physician did not report that Henderson was expected to be permanently disabled.
 
 
 5
 The ALJ's reasons for disregarding a treating physician's opinion must be clear and convincing.[2] Lester v. Chater, 69 F.2d 1453, 1463 (9th Cir.1995). The ALJ's reasons do not meet this standard.
 
 
 6
 First, that Dr. Jarrot in 1984 did not report that he expected Henderson to be permanently totally disabled is neither a statement of opinion nor a convincing reason to disregard Dr. Bertucci's more recent opinion that, in fact, Henderson was permanently totally disabled. This is particularly true where Dr. Jarrot also stated that Henderson would be totally administratively disabled for at least one year after his July 9, 1984, surgery and that his prognosis was "guarded."[3]
 
 
 7
 Second, we note that the Secretary may, and indeed does, rely on the opinions of non-examining advisors in deciding to deny benefits. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1985) (reports of non-examining advisor may serve as substantial evidence in support of decision denying benefits when supported by other evidence in the record). Thus, the mere fact that Dr. Bertucci did not examine Henderson immediately prior to rendering his decision is not a convincing reason for disregarding Dr. Bertucci's opinion, which is uncontradicted and supported by other evidence in the record. Furthermore, we note that Dr. Bertucci's opinion was based upon factors--the chronicity of Henderson's back problems coupled with Henderson's six surgeries--that could be ascertained without a medical exam. Thus, there is no apparent reason for disregarding Dr. Bertucci's opinion simply because he had not seen Henderson for over a year.[4]
 
 
 8
 B. Did the ALJ improperly discredit Henderson's excess-pain testimony?
 
 
 9
 At the administrative hearing, Henderson testified that in 1986[5] he was "having a lot of pain" and "wasn't doing much of anything really." He also testified as follows:
 
 
 10
 Q: Going back into 1986 and talking about your back, was the back a constant pain--trouble?
 
 
 11
 HENDERSON: Yeah.
 
 
 12
 Q: Did it limit your ability to do certain activities?
 
 
 13
 HENDERSON: Yes, it did.
 
 
 14
 Q: If you tried to stand for periods of time, did it bother you then?
 
 
 15
 HENDERSON: Yeah.
 
 
 16
 Q: What would happen if you, if you were standing?
 
 
 17
 HENDERSON: Standing, pain in the hips and the legs. I could stand for a while then, I'd have to sit down. Still have a problem with that. It's just very uncomfortable all the time.
 
 
 18
 Q: Would it bother you when you sat?
 
 
 19
 HENDERSON: If I sit for too long, as a matter of fact I have to get up and move around a bit, even if it's just to walk around for, for a little--for a few minutes.
 
 
 20
 Q: In 1986, was it bothering you--
 
 
 21
 HENDERSON: Yes.
 
 
 22
 Q: --then? Do you recall in--not trying to ask you to make up a number--do you recall back in 1986 about how long you could sit comfortably?
 
 
 23
 HENDERSON: Maybe half hour, 20 minutes.
 
 
 24
 Q: And, how about standing? Was about the same time, less--
 
 
 25
 HENDERSON: That's--even less than that.
 
 
 26
 Q: Would it--the back back in '86 bother you if you tried to pick up things?
 
 
 27
 HENDERSON: Oh, definitely.
 
 
 28
 Q: Could you lift any significant weight?
 
 
 29
 HENDERSON: No.
 
 
 30
 Q: What do you think about the heaviest thing you could lift without severe pain--back pain?
 
 
 31
 HENDERSON: You mean how much weight?
 
 
 32
 Q: Yeah. If you recall or you want to guess.
 
 
 33
 HENDERSON: Twenty pounds. Fifteen, 20 pounds.
 
 
 34
 Henderson also testified that since his initial back injury in 1979 there has never been an extended period of time when he did not have significant pain in his back.
 
 
 35
 Despite Henderson's testimony, the ALJ found that by November of 1985, Henderson "was capable of light work which did not involve significant bending, and which could be performed with moderate limitations regarding work with the public, detailed instructions, extended periods of concentration, and independent planning or goal setting."
 
 
 36
 If the medical evidence establishes an objective basis for the claimant experiencing some degree of pain and there is no evidence suggesting that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's pain testimony and those reasons must be supported by specific findings. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir.1993). The Secretary contends, without explanation, that the following reasons support the ALJ's decision to disregard Henderson's pain testimony: (1) Henderson engaged in a fist fight in 1986; (2) Henderson admitted in 1991 that he had exaggerated his condition to get drugs; and (3) Henderson's physicians had prescribed conservative treatment from 1987 to March of 1992.
 
 
 37
 As Henderson notes, he testified at the administrative hearing that he was probably drinking when the fist fight occurred and that he felt better when he was drinking and would be a little more active. Thus, his participation in a fist fight is not a convincing reason for disregarding Henderson's pain testimony.
 
 
 38
 Henderson also notes that his 1991 statement that he had exaggerated his pain to get drugs was made four and one-half years after his date last insured, and the record does not reveal the time period during which Henderson exaggerated his pain. Consequently, his unqualified statement that he had exaggerated his pain in the past does not contradict his statement that he was experiencing constant pain as of his last date insured.
 
 
 39
 Finally, the ALJ failed to explain why it is significant that only conservative treatment was prescribed for Henderson between 1987 and 1992, when Henderson's testimony properly focused on his pain in 1986, the date he was last insured. It is undisputed that as of 1986 Henderson had had at least six back surgeries.
 
 
 40
 In sum, we find that the ALJ erred in discrediting Henderson's pain testimony.
 
 
 41
 C. Did the ALJ fail to properly develop the record?
 
 
 42
 The ALJ in social security cases has a duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel.[6] DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir.1991); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983). Henderson contends that the ALJ failed to properly develop the record by (1) failing to request an opinion from his physicians as to what he can still do despite his impairments, and (2) failing to question Henderson as to his own opinion of his functional capacity. We agree. Furthermore, by rejecting Dr. Bertucci's opinion of total disability and then failing to request an opinion from Henderson's physicians as to what he can still do despite his impairments, the ALJ failed to comply with the agency's own regulation, 20 C.F.R. § 404.1513(b)(6), which provides that the Secretary will request a medical source statement about what the claimant can still do despite his or her impairments. Although the Secretary is correct that the regulations also provide that a medical report is not incomplete if it does not contain such information, this aspect of the regulation does not obviate the ALJ's responsibility to request this information in the first place.
 
 
 43
 Finally, Henderson contends, and the Secretary does not dispute, that the ALJ failed to adequately develop the record pursuant to SSR 88-13,[7] which requires the Secretary to obtain detailed descriptions of the claimant's daily activities from the claimant, the claimant's physicians and third parties if the claimant's pain allegations are not supported by the objective medical evidence in the file.
 
 
 44
 D. Did the ALJ err in finding that Henderson can perform his past work as a courier?
 
 
 45
 Finally, Henderson challenges the ALJ's ultimate conclusion that he can perform his past work as a courier. He contends that he has met his burden of showing he cannot perform his past work as a courier by introducing Dr. Bertucci's opinion that he is unable to engage in any employment. Henderson also notes that there is evidence in the record that his previous job required him to sit for 6 hours a day, and according to his own testimony, he cannot sit for longer than twenty or thirty minutes. We agree with Henderson that the ALJ's finding that he can perform his past work as a courier is not supported by substantial evidence because the hypothetical upon which the vocational expert based her opinion did not include all of his limitations. In particular, it did not include his limitations on sitting and standing. Hypothetical questions posed to a vocational expert must set out all the limitations and restrictions of the particular claimant. Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir.1988). If the hypothetical is incomplete, the vocational expert's opinion has no evidentiary value. Id.
 
 
 46
 Henderson, relying on Rodriguez v. Bowen, 876 F.2d 759 (9th Cir.1989), contends that we should reverse and award benefits rather than remand to the ALJ. In Rodriguez, the claimant's treating physician expressed an opinion that the claimant could perform only sedentary or light work for a maximum of four hours a day. We held that because the ALJ failed to present sufficient reasons for disregarding the physician's opinion, the Secretary had accepted it as true, and, therefore, remand was not necessary because the ability to work only a few hours a day does not constitute the ability to engage in substantial gainful activity. In light of the ALJ's failure to provide clear and convincing reasons for disregarding Dr. Bertucci's opinion that Henderson is totally and permanently disabled, we find it appropriate under Rodriguez to reverse and remand for the payment of benefits. See also Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987) (remanding for payment of benefits where ALJ improperly disregarded treating physician's opinion that claimant had an impairment equal to a listed impairment).
 
 II. CONCLUSION
 
 47
 The ALJ failed to provide sufficient reasons for disregarding Dr. Bertucci's opinion that Henderson is totally and permanently disabled and Henderson's testimony regarding his physical limitations. Consequently, the Secretary has accepted his opinion. According to Dr. Bertucci's opinion, Henderson cannot perform any work existing in the national economy. Consequently, we REVERSE and REMAND for the payment of benefits.
 
 
 
 *
 Shirley S. Chater, Commissioner of Social Security, has been substituted for Donna E. Shalala, Secretary of Health and Human Services, in accordance with P.L. 103-296, the Social Security Independence and Program Improvements Act of 1994, and pursuant to Federal Rule of Appellate Procedure 43(c)(1). Because the Secretary of Health and Human Services was responsible for the actions of the Social Security Administration at the time of its final decision in this case, we refer to defendant as "the Secretary" throughout this opinion for the sake of convenience
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In 1981, Henderson underwent a discectomy, which is the removal in part or whole of a intervertebral disk, after a myelogram showed a disc herniation of L4-5. Henderson's February 1983 surgery involved a complete laminotomy at L4, a right foraminotomy at L4-L5, a discectomy at L4-L5, and a right L5-S1 laminotomy and discectomy. A laminotomy involves the division of a vertebral plate, while a foraminotomy is the surgical enlargement of the intervertebral foramen, which is an opening into the vertebral canal. In May of 1984, Henderson underwent a bilateral laminotomy, L4-L5 with radical bilateral discectomy and foraminotomy, an L5-S1 bilateral laminotomy and foraminotomy, and a bilateral posterior lateral L4-sacral fusion. In July of 1984, Henderson underwent a bilateral laminectomy, which is the removal of a vertebral lamina, and bilateral repeat radical discectomy and foraminotomy at L4-L5, a bilateral L5-S1 foraminotomy, and a L4-L5 posterior lumbar antibody fusion. In October of 1984, Henderson underwent a laminotomy and disc exploration, a foraminotomy at L3-4, L4-5, L5-S1 on the right, a disc fragment excision at L4-5 on the right and a partial discectomy
 
 
 [2]
 The Secretary contends in a conclusory fashion, unsupported by citation to authority, that Dr. Bertucci should not be considered a treating physician. Such an assertion is insufficient to challenge the facts of record, which show that Dr. Bertucci treated Henderson during several hospitalizations and assisted Dr. Jarrot with Henderson's July 1984 surgery
 
 
 [3]
 Dr. Jarrot also stated that "[h]opefully intervertebral fusion will have better success than posterolateral fusion, but if note [sic], the patient may, in fact, become a chronic pain candidate for psychometric management and pain clinic referral."
 
 
 [4]
 That a physician has neither treated nor examined a patient for some time prior to rendering his or her opinion may go to the weight to be given the opinion; however, in the absence of evidence in the record contradicting the opinion, it cannot be a convincing reason for completely disregarding it
 
 
 [5]
 The parties agree that Henderson was last insured as of December 31, 1986. Consequently, he must show that he was disabled on or before that date
 
 
 [6]
 Henderson contends that he was not represented by an attorney, so the ALJ's duty was heightened. However, as the Secretary notes, although the individual who represented Henderson before the ALJ was not a member of the bar at the time of the hearing, he was trained in the law and was previously and is presently a member of the bar
 
 
 [7]
 SSR 88-13 was superseded in the Fourth Circuit only by SSR 90-1p. SSR 88-13 and SSR 90-1p have both been superseded by SSR 95-5p. However, SSR 95-5p does not apply in this case because it did not become effective until October 31, 1995